STATE *ex rel.* H. W. CHILDS, Attorney General, *vs.* JOSEPH L. KIICHLI.

53  147
73  534
53  147
s19LRA 779
52LRA406n

Argued April 20, 1893.   Decided April 27, 1893.

## Removal from Office.

The president of the city council of the city of Minneapolis is not an "officer" of the city, within the meaning of either the city charter or article 13, § 2, of the constitution, but merely an officer or servant of the city council which elected him, and as such, according to the rules of parliamentary law, is removable at the will or pleasure of that body.

The Attorney General presented to the Chief Justice of this court on March 24, 1893, an information, and an order was made that a writ of *Quo Warranto* issue, returnable before the court on April 4th, then next, requiring Joseph L. Kiichli to then and there show by what warrant he intruded into, held and exercised the office of President of the City Council of the City of Minneapolis.

The writ was issued and served and the respondent made answer that Alderman Henry W. Brazie was on January 2, 1893, elected president of the council, and acted as such until March 10, 1893. On that day at a regular meeting of the council the office of President of the City Council was declared vacant, and Brazie ceased to act. That respondent was then duly elected President, and has since acted by virtue of such election.

*Henry W. Childs*, Atty. Genl., *D. F. Morgan*, and *W. E. Hale*, for relator.

The relator contends that the Common Council of the City of Minneapolis has no power to remove its duly elected, and acting

president, upon the mere volition of a majority of the members, without any charge against him of malfeasance or nonfeasance in the performance of his duties.    That the President of the City Council is a public officer; that he holds for a definite term; that under the Constitution, art. 13, § 2, the authority of the Legislature to provide for the removal from office of a public officer, holding for a definite term, is limited to cases of malfeasance or nonfeasance in the performance of his duties; and that the Charter of Minneapolis confers no power upon the City Council to remove, without cause, an officer holding for a term fixed by law.

The President of the City Council is a public officer. *People ex rel.* v. *Common Council,* 77 N. Y. 503; *Bradford* v. *Justices,* 33 Ga. 336; *Clark* v. *Stanley,* 66 N. C. 63; *State ex rel.* v. *Anderson,* 45 Ohio St. 196.

Under the Constitution, art. 13, § 2, the authority of the Legislature to provide for the removal from office of a public officer holding for a definite term, is limited to cases of malfeasance or nonfeasance in the performance of his duties. *State ex rel.* v. *Peterson,* 50 Minn. 239; *Andrews* v. *King,* 77 Me. 224; *Farrell* v. *Bridgeport,* 45 Conn. 191; *Cobb* v. *Portland,* 55 Me. 381; *Lowe* v. *Commonwealth,* 3 Met. (Ky.) 237; *Brown* v. *Grover,* 6 Bush, 1.

It is only where the Constitution is silent as to the mode and cause of removal of the officer that the Legislature has full control of the whole subject. *Ex parte Wiley,* 54 Ala. 226.

If an office is created and the term fixed by the Constitution, which also declares for what causes and in what mode, an incumbent of it may be removed, before the expiration of his term, neither the Legislature nor the Executive can remove or suspend, for any reason, or in any other mode, than that provided. *Page* v. *Hardin,* 8 B. Mon. 648; *Commonwealth* v. *Gamble,* 62 Pa. St. 343; *State* v. *Draper,* 50 Mo. 353; *State* v. *Thoman,* 10 Kan. 191; *State* v. *McNeely,* 24 La. An. 19.

The President of the Council is an inferior officer and within this section of the Constitution. *People* v. *Comptroller,* 20 Wend. 595; *Bergen* v. *Powell,* 94 N. Y. 591; *People* v. *Hill,* 7 Cal. 97; *Smith* v. *Brown,* 59 Cal. 672; *Houseman* v. *Commonwealth,* 100 Pa. St. 222.    The Charter confers no power upon the City Council to

remove its President without cause. *Page* v. *Hardin*, 8 B. Mon. 648; *State* v. *Chatburn*, 63 Iowa, 659; *State* v. *Pritchard*, 36 N. J. Law, 101; *People ex rel.* v. *Nichols*, 79 N. Y. 582; *State ex rel.* v. *Smith*, 35 Neb. 13.

The doctrine that an officer may be removed at pleasure has grown up in the American courts. At common law, an officer could be removed only for cause and after a hearing. *Metevier* v. *Therrien*, 80 Mich. 187; *Ex parte Ramshay*, 18 Q. B. 173; *Queen* v. *Archbishop of Canterbury*, 1 El. & El. 545.

The arbitrary power of removal is not conferred upon the council by the charter, either in terms or by necessary implication. *Hall-gren* v. *Campbell*, 82 Mich. 255.

*Brooks & Hendrix*, for respondent.

It is usual and proper to remove such officer by a motion which declares the office vacant. And it is common knowledge that when a motion concerns the presiding officer, it is properly put to the assembly by the person by whom the motion is made. If the office becomes vacant, the previous incumbent is necessarily removed. The like result is obtained by the election or appointment of a successor. *People* v. *Carrique*, 2 Hill, 93; *Pepis' Case*, 1 Vent. 342; *Ex parte Hennen*, 13 Pet. 230; *Williams* v. *Gloucester*, 148 Mass. 256; *Blake* v. *United States*, 103 U. S. 227.

The constitutional restriction upon legislative power in the use of the words "inferior officers" has no reference to the office in controversy. Among the cases cited by relator *Houseman* v. *Commonwealth*, 100 Pa. St. 222, is the only one where the question seems to have received any particular attention. In *People* v. *Comptroller*, 20 Wend. 595, the court was "inclined to think" that the commissioners were officers, but the point was unncessary to the determination of the case. And in each of the cases of *Bergen* v. *Powell*, 94 N. Y. 591; *People* v. *Hill*, 7 Cal. 97, and *Smith* v. *Brown*, 59 Cal. 672, the point was apparently taken for granted without discussion. Constitutional limitations upon the power of the Legislature in respect to officers, will be confined to those offices which are specially enumerated in the Constitution, unless the contrary expressly appears therefrom. *State* v. *Seavey*, 22 Neb. 454; *Doug-*

*las County* v. *Timme,* 32 Neb. 272; *People* v. *Provines,* 34 Cal. 520; *State* v. *Kirk,* 44 Ind. 401; *Mohan* v. *Jackson,* 52 Id. 599; *Res publica* v. *Dallas,* 3 Yeates, 300; *State* v. *Somnier,* 33 La. An. 237; *Robinson* v. *White,* 26 Ark. 139; *State ex rel.* v. *Kalb,* 50 Wis. 178.

When an office is created by statute, it is entirely within the control of the legislature. *People* v. *Haskell,* 5 Cal. 357; *People* v. *Banvard,* 27 Id. 470; *Evans* v. *Populus,* 22 La. An. 121; *Farwell* v. *Rockland,* 62 Me. 296; *Prince* v. *Skillin,* 71 Id. 361; *Taft* v. *Adams,* 3 Gray, 126; *Commonwealth* v. *Bacon,* 6 Serg. & R. 322; *Barker* v. *Pittsburgh,* 4 Barr, 49; *Conner* v. *Mayor, etc., of New York,* 2 Sandf. 355, 5 N. Y. 285; *Augusta* v. *Sweeney,* 44 Ga. 463; *Robinson* v. *White,* 26 Ark. 139; *Butler* v. *Pennsylvania,* 10 How. 402; *Commissioners of Hennepin County* v. *Jones,* 18 Minn. 199, (Gil. 182.)

It is the law almost universally recognized in this country. that in the absence of restrictive provisions of law, "the power of removal is incident to the power of appointment;" and in such case, removal is permissible at the pleasure of the appointing power, and without notice or hearing. *Avery* v. *Tyringham,* 3 Mass. 160; *Ex parte Hennen,* 13 Pet. 230; *Commonwealth* v. *Sutherland,* 3 Serg. & R. 145; *Laimbeer* v. *Mayor,* 4 Sandf. 109; *People* v. *Mayor of New York,* 5 Barb. 43; *People ex rel.* v. *Fire Commissioners,* 73 N. Y. 437; *Newsom* v. *Cocke,* 44 Miss. 352; *People* v. *Higgins,* 15 Ill. 110; *State* v. *Alt,* 26 Mo. App. 673; *Patton* v. *Vaughan,* 39 Ark. 211; *People* v. *Hill,* 7 Cal. 97.

There are other cases in which the term prescribed was coupled with a provision whereby the appointing power could remove the officer prior to the expiration of his term. *State* v. *McGarry,* 21 Wis. 496; *People ex rel.* v. *Whitelock,* 92 N. Y. 191; *Sweeney* v. *Stevens,* 46 N. J. Law, 344; *State* v. *Somers,* 35 Neb. 322; *Eckloff* v. *District of Columbia,* 135 U. S. 240.

But the President of the City Council is an officer wholly different from the executive and administrative officers authorized to be appointed by the City Council. He is essentially a legislative officer, i. e. an officer of a legislative body, and as such by common law and parliamentary usage, as well as under the charter, is removable at the will and pleasure of that body. The City

Council is a local legislative body. It resembles the Legislature of an independent state, acting under a constitution prescribing its powers." *Denning* v. *Roome,* 6 Wend. 651; *Wetmore* v. *Story,* 22 Barb. 414; *Cochran* v. *McCleary,* 22 Iowa, 75.

The President of the City Council of Minneapolis has in fact but little power and few privileges. He appoints no committee, unless authorized to do so by the Council itself. He receives no emoluments or compensation for his services as such. He has no casting vote in case of a tie. He can vote once in his capacity of alderman, but has no additional vote as president. He is not *ex officio* a member of any board. Nor is there any statute whereby the President of the City Council is required, or authorized to authenticate any ordinance, resolution or record. If it be his duty to do this, it is because the duty is imposed by parliamentary law. And aside from the fact that in a certain contingency he may by the terms of the statute become acting Mayor, this officer has no franchise or privilege additional to that of the other members of the Council, except only the right to preside at its meetings. A mere presiding officer is but the servant of the house, to declare its will and to obey implicitly all its commands. 2 Bentham's Political Tactics, 347; Cushing's Manual, 293, 493; 5 Hume's History of England, 208; *In re Speakership,* 15 Col. 520.

Brazie had lost the confidence of a majority of the Council. The vote taken was notice sufficient. And there was nothing revolutionary in this proceeding. On the contrary, it was in accordance with precedent and the well recognized rules of parliamentary law. And it was essential to an efficient and orderly administration of municipal affairs. *Madison* v. *Korbly,* 32 Ind. 78.

MITCHELL, J. This is a proceeding in the nature of *quo warranto,* requiring the respondent "to show cause by what warrant he holds and exercises the office of president of the city council of Minneapolis."

It appears that on January 2, 1893, the city council duly elected Henry W. Brazie, one of their members, president of their body; that Brazie entered upon his duties as such, and continued in their exercise until March 10th, when the city council, by resolution,

declared the office vacant, and then elected the respondent. The contentions of the relator are that (1) the "presidency of the city council" is a "public office," and its incumbent a "public officer," within the meaning of both the city charter and Art. 13, § 2, of the constitution of the state. (2) Such officer holds his office for a definite term, under the provisions of chapter 2, § 1, of the city charter, which provides that all officers appointed by the council shall, unless otherwise provided, hold their respective offices for the term of two years, etc. (3) The city charter, ch. 4, § 4, confers no power on the city council to remove an officer for a term fixed by law except for cause, after a hearing and an opportunity to be heard. (4) But, if it does, it is invalid, for the reason that under Article 13, § 2, of the constitution, the authority of the legislature to provide for the removal of public officers holding for a definite term is limited to cases of malfeasance or nonfeasance in office.

While counsel have argued all these propositions ably and exhaustively, the conclusion at which we have arrived renders it unnecessary to consider any but the first.

The city charter provides that the city council shall consist of a certain number of aldermen, to be elected in each ward.

It enumerates the elective officers of the city, and provides that all other officers necessary for the proper management of the affairs of the city shall be appointed by the city council, unless the charter otherwise provide. It then proceeds to provide specifically for numerous appointive, executive, and administrative officers, among whom "President of the city council" is not named.

The only provisions in the charter in reference to the election or duties of the President of city council are found in ch. 3, § 2, which is that "at the first meeting of the city council in January of each year, after a general state election, they shall proceed to elect by ballot *from their members* a president and vice president. The president shall preside over the meetings of the city council, and during the absence of the mayor from the city, or his inability for any reason to discharge the duties of his office, the said president shall exercise all the powers and discharge all the duties of the mayor." Ch. 4, § 1, of the charter merely repeats the provision that the president of the city council shall, when present, preside at all its meetings.

Aside from the fact that in a certain contingency the president of the city council may become acting mayor, he has no franchise, power, or duty additional to those of other members of the council, save only that of presiding at their meetings. There is nothing in the charter indicative of an intention to confer any powers or impose any duties upon him as an officer of the city, or any as president of the city council, except those belonging, under common parliamentary law, to the presiding officer of any legislative body. The sole purpose of the statute was merely to regulate the time when, and the manner in which, the city council should organize and elect their presiding officer, and to provide that, upon the happening of a certain contingency, such presiding officer, for the time being, whoever he might be, should perform the duties of mayor. There is nothing indicating an intention to create a city office distinct from that of alderman. The president of the council must be an alderman, and, when he ceases to be an alderman, he necessarily ceases to be president of the council, whether he has occupied that position two years or only two days,—a fact which shows that he is at least not an "officer," within the purview of ch. 2, § 1, fixing the term of appointive officers at two years. While acting as president of the council, he still continues to be an alderman, and his ceasing to be president in no way effects his *status* as alderman. From the earliest history of legislative bodies the rule of parliamentary law has been that a legislative body having the power to choose its own presiding officer from its own members has also the inherent power to remove such officer at its will or pleasure, unless prohibited by some express constitutional or statutory provision. In Cushing's Law and Practice of Legislative Assemblies, at section 299, the author says: "The presiding officer, being freely elected by the members by reason of the confidence which they have in him, is removable by them at their pleasure, in the same manner, whenever he becomes permanently unable, by reason of sickness or otherwise, to discharge the duties of his place, and does not resign his office, or whenever he has in any manner or for any cause forfeited or lost the confidence upon the strength of which he was elected." And in section 294 the same author says: "The presiding officer * * * is but the servant of the house to declare its will and to obey implicitly all its com-

mands,"—a duty so forcibly expressed in the memorable reply of the speaker of the house of commons to Charles I.

This control of a legislative body over their presiding officer rests upon the fundamental principle that the majority has the power to control the action of the body within the limits of its jurisdiction, except as otherwise provided by positive law.

A city council is a local legislative body, and in creating it the legislature, by implication, within the limits prescribed, conferred upon it all the powers and privileges in the manner of conducting their own proceedings usually recognized by parliamentary law as belonging to such bodies; and it would require a clear and explicit expression of legislative intention to that effect to justify the conclusion that it was the design to deprive this city council of the universally recognized parliamentary right of control over their own presiding officer. Such an intention is not to be inferred from the mere fact that, in order to insure a prompt and orderly organization of that body, the legislature has given directions as to the time and manner of doing so.

We think the right of the council to change their presiding officer at pleasure would hardly be seriously denied except for the fact that he may in a certain contingency be called on to temporarily perform the duties of mayor. This, it is claimed, makes him something more than the mere presiding officer of the city council; that he thereby becomes an officer of the city, whom, for want of a better term, we may call "contingent mayor." We fail to see any force in this.

It would be sufficient for the purposes of this case to say that no such contingency has arisen; but we think that all this provision of the charter means is that, whenever any such contingency arises, whoever then happens to be president of the city council, for the time being, shall perform the duties of mayor. There is nothing to indicate that it was ever intended to create a distinct city office for that purpose.

In some states the law provides that in certain contingencies the speaker of the house of representatives shall perform the duties of governor; and until some seven years ago there was an act of congress providing that in a certain contingency the speaker of the house of representatives, for the time being, should act as president

of the United States. But it would hardly be claimed that the effect of such provisions was to deprive either the state or federal legislature of the usual parliamentary power over their own speaker, or to constitute such speaker a state or federal officer, distinct from that of member of the body to which he belonged.

*In re Speakership of the House of Representatives*, 15 Colo. 520, (25 Pac. Rep. 707,) which is a well considered case, is the only authority directly in point which we have found, but it fully covers, as we think, every question involved here.

We do not think that *State* v. *Anderson*, 45 Ohio St. 196, (12 N. E. Rep. 656,) relied on by counsel for relator, at all militates against our views. That case merely *decided* that the presidency of a city council was a "public office," within the meaning of a statute authorizing an action in *quo warranto* to be brought against any one who usurped a public office. The words "office" and "officer" are terms of vague and variable import, the meaning of which necessarily varies with the connection in which they are used, and, to determine it correctly in a particular instance, regard must be had to the intention of the statute and the subject-matter in reference to which the terms are used. Now, from time out of mind, the law has been that *quo warranto* would lie, not only against one unlawfully holding or exercising a public office, but also against any one unlawfully exercising a public franchise, such as the right to preside over a public corporation. As this is a right which could not be tried in any collateral proceeding, and as a court of chancery would not interfere before a trial at law, it would follow that, if *quo warranto* would not lie, there would be no remedy except the inherent right of every legislative body to eject an intruder or usurper by force; hence the court, in the case referred to, being naturally and very properly desirous of so construing the statute as to give an adequate remedy, held that the word "office," as used in that statute, included the franchise or right of presiding over a city council. See *Cochran* v. *McCleary*, 22 Iowa, 75.

Our conclusion is that the president of the city council of Minneapolis is not an "officer" of the city, within the meaning of either the city charter or the constitution, but that he is merely the

officer or servant of the legislative body which elected him, and that, as such, he is removable at the will or pleasure of that body.

Writ quashed.

VANDERBURGH, J., absent, took no part.

(Opinion published 54 N. W. Rep. 1069.)