DAVID W. OLIVER v. THE MAYOR AND ALDERMEN OF JERSEY CITY AND THE GREENVILLE AND HUDSON RAILWAY COMPANY.

*Argued November 9, 1898—Decided February 27, 1899.*

1. This court may, in its discretion, at the instance of private persons, act by *mandamus, certiorari* or *quo warranto*, for the redress or prevention of public wrongs by public bodies and officers whose official sphere is confined to some political division of the state, whenever the applicant is one of the class of persons to be most directly affected in their enjoyment of public rights, and the public convenience will be subserved by the remedy desired. This rule will prevail and be applied without showing that the applicant for the writ will suffer a special injury beyond that which will fall upon him in common with the rest of the public, except in cases where the municipal action is *ultra vires*, and will furnish no justification for the act authorized by it, so that if the power purporting to be granted is exercised the work will be a public nuisance or the act a tortious act, for which there is redress by another appropriate remedy.

2. The board of street and water commissioners in Jersey City has power to authorize grade crossings by railroads over the streets.

3. The position of colonel in the Fourth regiment of New Jersey volunteers for the United States army is an "office" within the meaning of the statute creating the board of street and water commissioners, which provides that if such commissioner shall accept any other appointment to public office his office of commissioner shall thereupon become vacant.

4. The acceptance of such an office disqualified such commissioner to vote for the passage of the certified ordinance.

5. The ordinance permitting four railroad tracks to be laid in the public street having failed, by reason of such disqualification, to receive the requisite number of votes, its validity may be challenged by the prosecutor on *certiorari.* The board having power to pass such an ordinance if the railroad is permitted to execute the work, it would not be indictable as a nuisance because it would be done under authority of a municipal ordinance, which cannot be attacked collaterally for want of conformity to the prescribed methods in passing it.

6. Both by the common law and the statute pertaining to this case, the acceptance of the incompatible office of colonel vacated the office of commissioner, and his vote for the ordinance, when its validity is directly challenged by *certiorari,* cannot be efficacious as the act of a *de facto* officer, to give it the quality of regularity and consequent legality.

7. When rights have been acquired by third persons under municipal action, without notice of an existing infirmity in it, where such action is not *ultra vires,* such persons are protected by the doctrine of estoppel and not by the rule relating to *de facto* officers.

On *certiorari.*

Before Justices DEPUE, VAN SYCKEL and LIPPINCOTT.

For the prosecutor, *Dickinson, Thompson & McMaster* and *Richard V. Lindabury.*

For the defendants, *Corbin & Corbin* and *William D. Edwards.*

The opinion of the court was delivered by

VAN SYCKEL, J.   The subject of review in this case is an ordinance passed by the board of street and water commissioners of Jersey City, granting to the Greenville and Hudson

Railway Company the right to cross Communipaw avenue at grade with four tracks.

The prosecutor is a resident and a taxpayer of Jersey City; his land is situated east of the National Docks road on Communipaw avenue, through which avenue he has been accustomed to travel in going to and from his premises.

The railroad tracks are not to be laid in the street in front of his abutting lands but on the street at some distance from the line of his premises.

The injury he will suffer is of like character with that which falls upon every citizen who uses the highway, although it may prove to be greater in degree.

It is therefore insisted by the defendants that the prosecutor will not suffer such an injury as entitles him to prosecute the writ of *certiorari.*

In my judgment the true rule on this subject is formulated in *Ferry* v. *Williams,* 12 *Vroom* 332, as follows:

"The court may, in its discretion, at the instance of private persons, act by *mandamus, certiorari* or *quo warranto,* for the redress or prevention of public wrongs by public bodies and officers whose official sphere is confined to some political division of the state, whenever the applicant is one of the class of persons to be most directly affected in their enjoyment of public rights, and the public convenience will be subserved by the remedy desired."

Mr. Justice Dixon, who delivered the opinion in that case, showed clearly that this rule is supported by authority, as well as commended by sound public policy.

It is manifestly illogical to say that a citizen and taxpayer may by *certiorari* challenge the fairness of an election to fix the site for public buildings, as in *Coxe* 244; that he may file an information testing the legality of the election of aldermen, as in 4 *Vroom* 195; that he may resort to the writ of *certiorari* to challenge the right to grant a license to sell liquor, and yet be properly denied the use of the same remedy to protect the highways, through which he must constantly pass and repass, from becoming inconvenient and dangerous.

There is no consistent rule of law nor any reason·of wise public policy to justify this court in granting its process in the one case and withholding it in the other, when the citizen at his own expense, and at the risk of burdensome costs, seeks to intervene for the purpose of averting imminent injury to the public of which he is a part.

The court in the exercise of its superintending power in granting the writ can always provide against its improvident use.

The general rule that a person who applies for a writ of *certiorari* must show that he will suffer a special injury beyond that which will affect him in common with the rest of the public is subject, as I think will appear from a careful consideration of our cases, to this qualification : Where the municipal ordinance is *ultra vires,* and will furnish no justification for the authorized act, so that if the power purporting to be granted is executed, the work will be a public nuisance or a tortious act, the writ of *certiorari* will be denied, not because the prosecutor is without interest in the subject-matter, but for the reason that there is another remedy by indictment or by civil action.

That was the situation and the reason for denying the remedy in *Montgomery* v. *Trenton,* 7 *Vroom* 79, and in *Jersey City* v. *Traphagen,* 24 *Id.* 434; and in Bamford *v.* Hollingshead, *mandamus* was refused because there was another remedy.

This rule was applied and the reason for it recognized in the case of *H. B. Anthony Shoe Co.* v. *West Jersey Railroad,* 12 *Dick. Ch. Rep.* 607.

The Supreme Court will intervene by *certiorari* at the instance of a property-owner, where the municipality attempts unlawfully to encroach upon his fee in the highway in front of his abutting lands, because he suffers a special injury.

Such are the cases of *Thompson* v. *Ocean City Railroad Co.,* 31 *Vroom* 74, and *Tallon* v. *Hoboken,* 31 *Id.* 212, as applied to the prosecutor, Devitt.

In the latter case, the court held that the city had no power to authorize a railroad, organized under the General Railroad law, to be laid longitudinally in the highway. The right, if any existed, depended upon the terms of the dedication of the highway by the owner of the fee under whom the prosecutors derived title. No support to the action of the company in using the highway could be maintained in virtue of the ordinance, which was *ultra vires,* and as to the other prosecutors it was properly held that *certiorari* would not lie. The right claimed under the dedication could not be contested by *certiorari.*

But in *State* v. *Justices of Middlesex, Coxe* 244; in *State* v. *New Brunswick, Id.* 393; in *State* v. *Griscom,* 3 *Halst.* 136; in *State* v. *Holliday, Id.* 205; in *State* v. *Rahway,* 4 *Vroom* 110; in *State* v. *Tolan, Id.* 195, and in *Ferry* v. *Williams,* 12 *Id.* 332, the writs of *certiorari* and *mandamus* were allowed to a prosecutor who had no interest in the subject-matter of the litigation other than that which vested in every other citizen, and in all those cases no other remedy was available to the citizen to guard him from being deprived of his rights as one of the public. The interest which every citizen has in public highways has been held sufficient to enable him to prosecute a *certiorari* to test the legality of the action of surveyors of the highways in vacating a public road, although he was not an abutting owner or interested in its continuance as such, otherwise than as one of the public. *State* v. *Snedeker,* 1 *Id.* 80.

This case was approved in *State* v. *Stout,* 4 *Vroom* 42, and in *State* v. *Jersey City,* 5 *Id.* 390.

This apparent conflict in the cases is logically reconcilable upon the rule laid down by Mr. Justice Dixon in *Ferry v. Williams,* whenever there is no other appropriate remedy if the act attempted to be authorized is permitted to be consummated.

My conclusion is that the prosecutor in the case now under review has such an interest as entitles him to controvert the validity of the certified ordinance, unless the city is wholly

without power to pass such an ordinance, and the railroad company would be subject to indictment for nuisance in acting under it.

I agree to the view of counsel for the defendants, that the board of street and water commissioners in Jersey City have the power to authorize grade crossings. The terms "common council" and "board of aldermen" in various acts relating to cities are used in the sense of "governing bodies."

The board of street and water commissioners in Jersey City is the governing body in respect to streets. *Gen. Stat., p.* 471, § 50; *Id., p.* 472, § 52.

The city having authority to pass this ordinance for a lawful purpose, it cannot, after it has accomplished its purpose, be attacked collaterally for irregularity in the mode of its enactment.

The prosecutor will be without legal remedy if he cannot challenge the validity of the ordinance by a direct attack upon it by *certiorari.*

The case, therefore, turns upon the question whether the ordinance was legally passed.

The ordinance was passed September 19th, 1898, was vetoed by the mayor September 28th, 1898, and was passed over the mayor's veto October 3d, 1898, by four affirmative votes. One of the four essential votes was cast by Robert G. Smith, who was elected one of the commissioners in April, 1898, and thereupon entered upon the duties of the office.

On the 18th of July, 1898, he volunteered in the United States army, and was mustered in as colonel of the Fourth regiment, New Jersey Guards, volunteers.

The statute creating the board of street and water commissioners provides:

"No such commissioner shall accept or hold any other place of public trust or emolument within the elective franchise, nor any appointment to public office, unless he shall first resign his said office, and if he shall so accept such other office, without having resigned his office of such commis-

sioner, upon his acceptance of such place or appointment his office of commissioner shall thereupon become vacant."

It is claimed, therefore, on behalf of the prosecutor, that there was a vacancy in the board of street and water commissioners from the time that Smith entered the United States army, and that the ordinance was not legally passed for the want of the necessary four votes.

Two questions are presented under this branch of the case :

*First.* Is the position of colonel in the United States army an "office" within the meaning of this act?

*Second.* Did the mere acceptance of this position by Colonel Smith vacate his office in the board of commissioners, without a judicial determination that a vacancy existed?

"A public office is the right, authority and duty created and conferred by law, by which, for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised by him for the benefit of the public. The individual so invested is a public officer." *Mech. Pub. Off., p.* 1, § 1.

"An office is a special trust or charge created by competent authority. If not merely honorary, certain duties will be connected with it, the performance of which will be the consideration for its being conferred upon a particular individual, who for the time will be the officer." Mr. Justice Cooley, in *Throop* v. *Langdon,* 40 *Mich.* 673.

It is held in *Kerr* v. *Jones,* 19 *Ind.* 351, "that the position of colonel in the United States army is an office, and that Benjamin Harrison, by accepting the office of colonel of volunteers, vacated the office of reporter, and that no judicial declaration of forfeiture was necessary."

To the like effect are the following cases : *State* v. *Allen,* 21 *Ind.* 516; *People* v. *Nostrand,* 46 *N. Y.* 375; *United States* v. *Hartwell,* 6 *Wall.* 385; *Rowland* v. *Mayor,* 83 *N. Y.* 372; *State* v. *Stanley,* 66 *N. C.* 59; *Texas* v. *De Gress,* 53 *Tex.* 387.

That the position held by Colonel Smith in the army is an

office in the legal acceptation of that term is well supported by the weight of authority.

If he is not regarded as holding an office incompatible with the civil office in Jersey City, the same rule would necessarily prevail if every other municipal officer held at the same time a like position in the army, and none of the civil offices would be vacant, although all the incumbents might be far distant in Porto Rico, Alaska or Manila.

The question remains whether his act in voting to pass the ordinance over the veto of the mayor had any efficacy.

In *State* v. *Parkhurst*, 4 *Halst.* 427, Chief Justice Kirkpatrick held that a person holding a seat in the legislature and afterwards being appointed to and accepting an office of profit, his seat in the legislature was thereby vacated.

This case was unanimously affirmed by the Court of Errors and was followed by the Supreme Court in *Clawson* v. *Thompson, Spenc.* 689, holding that such acceptance is in itself an avoidance of the former office without any formal resignation or surrender.

The case of *Clark* v. *Ennis*, 16 *Vroom* 69, is relied on to establish the doctrine that there must be a judicial declaration of the forfeiture of the prior office.

But that decision, of the correctness of which we entertain no doubt, is not an authority for such a proposition as applicable to this case.

In Clark *v.* Ennis the sheriff was elected to that office for a term of three years, and the statute imposed upon him the duty of renewing his bond annually on penalty of forfeiting his position.

The court found, in the legislation bearing upon the subject, indubitable evidence of an intention on the part of the legislature that his official acts as to the public should be valid until it was judicially determined that the office had become vacant.

By the express words of the statute, upon the acceptance by Smith of the office of colonel in the United States army, his office of commissioner became vacant, and his vote for

this ordinance, when its validity is directly challenged by *certiorari*, cannot be efficacious to give it the quality of regularity and consequent legality, because it lacked the essential number of votes.

Many adjudged cases and the text-writers unite in maintaining this view of the law. *People* v. *Carrique*, 2 *Hill* 93; *Kerr* v. *Jones*, 19 *Ind.* 351; *Kelly* v. *Brooklyn*, 77 *N. Y.* 503; *State* v. *Allen*, 21 *Ind.* 516; *Stubbs* v. *Lee*, 64. *Me.* 195; *Magie* v. *Stoddard*, 25 *Conn.* 565; *State* v. *Goff*, 9 *Atl.* *Rep.* 226; *Mech. Pub. Off.*, §§ 420, 425, 429; *Tied. Mun. Corp.*, § 86; 1 *Dill. Mun. Corp.*, *p.* 308, § 225.

The same rule prevailed at common law. *State* v. *Bus*, 36 *S. W. Rep.* 636; *Mech. Pub. Off.*, § 420, and cases cited in note.

A leading case upon the subject of *de facto* officers is *State* v. *Carroll*, 38 *Conn.* 4.

While the definition given by the Connecticut court of an officer *de facto* is substantially correct as a general statement, it does not affect the question involved here.

When rights have been acquired by third persons under municipal action without notice of an existing infirmity in it, where such action is not *ultra vires*, such persons are protected by the doctrine of estoppel and not by the rule pertaining to *de facto* officers. *State* v. *Perkins*, 139 *Mo.* 106; *Williams* v. *Boynton*, 147 *N. Y.* 426.

In what cases public corporations will be prohibited from setting up the want of regularity in their proceedings or the want of conformity to prescribed methods, as against those who in good faith accept and act upon them as regular and valid, it is not necessary to the decision of this case to consider.

The validity of this ordinance was promptly challenged by an allowance of the writ of *certiorari* on the day it was passed over the mayor's veto. It was not passed in accordance with the requirements of the municipal charter and is without the sanction of lawful authority.

No rights have been acquired by third persons under it, and it must be set aside, with costs against the Greenville and Hudson Railway Company.