EDWARD A. CAMPBELL, PLAINTIFF IN ERROR, v. FRED-
ERICK GILKYSON, ACTING ADJUTANT-GENERAL, DE-
FENDANT IN ERROR.

Argued June 21, 1909—Decided January 6, 1910.

The supplement of March 2d, 1909, to the "Act concerning the militia
of the state" (*Pamph. L.* 1909, *p.* 13), which provides that when
any commissioned officer shall reach the age of sixty-four years
he shall be retired from active service, so far as it applies to the
incumbents of offices created by the constitution, and who were
commissioned before the passage of the supplement, is in contra-
vention of the constitutional provision contained in article 7, sec-
tion 1, *placitum* 6, that "No commissioned officer shall be removed
from office but by the sentence of a court-martial."

On error to the Supreme Court.

For the plaintiff in error, *Robert H. McCarter.*

For the defendant in error, *Edmund Wilson,* attorney-gen-
eral, and *Nelson B. Gaskill,* assistant attorney-general.

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE.    Edward A. Campbell, the
plaintiff in error, was, on the 17th day of May, 1902, elected
by the field officers of the First brigade of the militia of the
state to the office of brigadier-general of that brigade, and,
two days afterwards, was duly commissioned as such officer by
the governor.

On March 2d, 1909, the legislature of the state enacted a
supplement to the act of May 16th, 1906, entitled "An act con-
cerning the militia of the state," which provided, among
other things, that "When any commissioned officer of the Na-
tional Guard or Naval Reserve of this state shall reach the
age of sixty-four years, he shall be retired from active service
and placed on the retired list."

On the 16th of March, 1909, an executive order was made
and published, pursuant to the provisions of the statute re-

ferred to, and signed by the defendant in error as acting adjutant-general, by the terms of which General Campbell was relieved from his command, and placed upon the retired list, he then being more than sixty-four years of age.

On April 1st, 1909, a second executive order was made and published, also signed by the defendant in error as acting adjutant-general, by the terms of which Colonel Edwin W. Hine of the Fifth regiment was ordered "to assume command of the First brigade until further orders, vice Brigadier-General Edward A. Campbell retired."

Subsequent to the issuing of this second order General Campbell sued out a writ of *certiorari* to review the validity of the executive order of March 16th, relieving him from his command, and placing him upon the retired list, contending before the Supreme Court that the act of March 2d, 1909, upon which this order was rested, was unconstitutional, so far as it operated to deprive him of his office of commander of the First brigade; the ground of his contention being that the constitution expressly prohibited the removal of any commissioned officer of the militia from his office, except by the sentence of a court-martial. The Supreme Court, upon the return of the writ, and after hearing argument, reached the conclusion that the retiring of a militia officer from active service and placing him upon the retired list, did not violate the constitutional provision appealed to by General Campbell, and dismissed the *certiorari*. The present writ of error is sued out to test the soundness of this conclusion.

The provisions of the constitution relating to the militia are found in article 7 of that instrument, which is entitled, "Appointing Power and Tenure of Office." This article is divided into two sections, the title to section 1 being "Militia Officers," and that of section 2 being "Civil Officers." The pertinent portions of section 1 are as follows:

"1. The legislature shall provide by law for enrolling, organizing and arming the militia.

"2. Captains, subalterns and non-commissioned officers shall be elected by the members of their respective companies.

"3. Field officers of regiments, independent battalions and

squadrons shall be elected by the commissioned officers of their respective regiments, battalions or squadrons.

"4. Brigadier-generals shall be elected by the field officers of their respective brigades.

"5. Major-generals, the adjutant-general and quartermaster-general shall be nominated by the governor, and appointed by him, with the advice and consent of the senate.

"6. The legislature shall provide, by law, the time and manner of electing militia officers, and of certifying their elections to the governor, who shall grant their commissions and determine their rank when not determined by law; and no commissioned officer shall be removed from office but by the sentence of a court-martial, pursuant to law."

It is to be observed from this citation that no limit to the terms of the military officers created by this section has been declared by the constitution. Until, therefore, the legislature sees fit to fix a definite term to them (assuming that it has the power to do so), the incumbents thereof are entitled to retain them indefinitely, unless they are removed by the sentence of a court-martial. The counsel for defendant in error argues, and the Supreme Court considered, that the act of March 2d, 1909, did not operate to remove General Campbell from his office; that, although it relieved him from his command, and placed him upon the retired list, it did not deprive him of his title, or his commission; and that the latter constituted his office. Notwithstanding that authority for this contention is to be found in the decisions of our sister states, we are not impressed with its soundness. The military titles used in the constitution had, at the time of the adoption of that instrument, a perfectly well-known and understood meaning. For instance, the title of an officer commanding a company was captain; the title of an officer commanding a regiment was colonel; the title of an officer commanding a brigade was brigadier-general. And so, when the constitution declared that captains should be elected by the members of their respective companies, that brigadier-generals should be elected by the field officers of their respective brigades, it was but another way of saying that the commanding officers of such

military bodies should be so selected. In other words, when the field officers of a particular brigade elect a brigadier-general, the brigade becomes (in the language of the constitution) *his* brigade; he becomes *its* commander. The commission which is thereafter issued to him by the governor is plenary evidence of his right to hold his office, but it does not constitute the office. A military office is a public office (*Oliver* v. *Jersey City,* 34 *Vroom* 102, 103; *Kerr* v. *Jones,* 19 *Ind.* 351), and a public office is "the right to exercise generally, and in all proper cases, the functions of a public trust or employment, and to receive the fees and emoluments belonging to it, and to hold the place and perform the duty for the term and by the tenure prescribed by law." *Matter of Hathaway,* 71 *N. Y.* 244; *United States* v. *Hartwell,* 6 *Wall.* 385; *Mech. Pub. Off.* 1, § 1. By virtue of his election, and his commission, General Campbell was entitled to exercise the functions of commander of his brigade, perform the duties of that office, and enjoy its honors and emoluments for the term and by the tenure prescribed by the constitution. These are the things which constitute his office; and when they are taken from him and conferred upon another, he is as much deprived of his office as if he had been removed by the sentence of a court-martial, notwithstanding that he is permitted to retain his title, and that his commission is not canceled.

The fifth article of the constitution, section 11, provides that the governor, and all other civil officers under this state, shall be liable to impeachment for misdemeanor in office. It has always been supposed, heretofore, that in no other way could any civil officer, from the governor down, be deprived of the functions, duties, powers and emoluments of his office during the term for which he was elected or appointed. But if the commission and the title constitute the office, this supposition is entirely fallacious. A governor who is politically obnoxious to the majority of the members of both branches of the legislature may be quietly and summarily disposed of by the enactment of a law providing that whenever the governor of the state has reached the age which the incumbent has attained, he shall be retired from active service, and placed upon the civil

retired list; and that the functions of the office shall be exercised by, its duties performed by, and its emoluments received by, say, the president of the senate, until another governor is elected.

The same easy way of disposing of any other civil officer may be adopted. I doubt, if after such an officer was so operated upon, when he was no longer permitted to perform the duties of his office, or enjoy its honors and emoluments, and saw another performing those duties, enjoying those honors and emoluments, he could be persuaded that, notwithstanding, he still remained in his office because he continued to be addressed by his title, and was permitted to retain his commission.

It is argued that the necessity for maintaining a military force sufficiently active in its component parts to be of value in time of war or insurrection, justifies the legislature in dealing with military officers along different lines from those which it adopts in dealing with civil officers. We find no warrant in the constitution for such differentiation. As has already been pointed out, the constitution groups both classes of office in the same article, and under a single heading, viz., "appointing power and tenure of office." Such a treatment of the subject by the constitution itself demonstrates, we think, that the tenure of office of an officer of the militia is just as sacred from legislative encroachment as that of any civil officer who serves the state. Both are equally protected by the constitution.

It is further suggested by counsel, and is considered by the Supreme Court, that the first paragraph of the section of the constitution which we have been considering, viz., that "the legislature shall provide by law for enrolling, organizing and arming the militia," is not given full force and effect unless the legislature is declared to have power to pass laws retiring officers of the militia who, by reason of advancing years, or physical or mental infirmity, have ceased to be capable of active service. The present case does not call for a determination of the existence of the power of the legislature to pass such laws. But assuming that such power exists, laws of that character, in order to comply with the constitutional require-

ment, must, in our opinion, provide for the submission to a court-martial of the question whether a given officer is so incapacitated; for his involuntary retirement from office permanently is, in effect, a removal from his office. What we cannot agree to is that the provision of the constitution appealed to negatives, to any extent, the succeeding provision that "no commissioned officer shall be removed from office but by the sentence of a court-martial." The power to organize the militia no more authorizes the legislature to pass statutes stripping military officers of their functions, duties and emoluments, without the intervention of a court-martial, when, in the legislative view, such statutes will make for greater efficiency in the militia, than it has to pass statutes providing for the appointment of military commanders by the governor, instead of by military elections, when, in its view, such a method of selection will result in strengthening the military arm of the state.

The supplement of 1909, so far as it provides for the compulsory retirement from active service of militia officers, whose offices are created by the constitution, and whose commissions antedate the enactment of the supplement, is, in our judgment, for the reason stated, in contravention of the organic law, and void. Whether it is valid so far as it affects the terms of officers elected or appointed since its passage, is a question not involved in the present case, and one which, therefore, has not received our consideration.

The judgment of the Supreme Court will be reversed, and the order, relieving General Campbell from his command and placing him upon the retired list, will be set aside and annulled.

*For affirmance*—THE CHANCELLOR.   1.

*For reversal*—THE CHIEF JUSTICE, REED, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VROOM, GRAY, JJ.   10.