(January 11, 1916.)

## R. G. PRICHARD, Appellant, v. F. J. McBRIDE and C. E. HAGMAN, Respondents.

[154 Pac. 624.]

COUNTY COMMISSIONERS—CHAIRMANSHIP—DURATION OF—ELIGIBILITY OF COMMISSIONER—NOT QUESTIONED IN MANDAMUS PROCEEDING.

1. *Held* that, under sections 1908 and 1909, Rev. Codes, it is the duty of the members of boards of county commissioners at their first regular meeting on the second Monday of January next after their election to elect a chairman from their number, who holds such position until the expiration of his term of office as commissioner, unless he resigns or is removed from, or ceases to be a member of, the board of county commissioners by operation of law.

[As to the various ministerial duties of county officers, see note in 95 Am. St. 80.]

2. *Held*, that the trial court did not err in holding that the eligibility of, or title to, the office of County Commissioner McBride under appointment could not be inquired into in this proceeding.

APPEAL from the District Court of the Eighth Judicial District in and for Bonner County. Hon. John M. Flynn, Judge.

Proceeding by *mandamus* to reinstate petitioner as chairman of the board of county commissioners of Bonner county. Judgment for defendants. *Reversed.*

H. H. Taylor, for Appellant.

While legislative bodies may reconsider an appointment, their power to so reconsider has clearly ceased to exist when the man elected has taken office. It is then too late to rescind. When an appointment has been made, it is complete. (*State v. Starr*, 78 Conn. 636, 63 Atl. 512; *Speed v. Common Council of Detroit*, 97 Mich. 198, 56 N. W. 570; *Attorney General v. Love*, 39 N. J. L. 476, 23 Am. Rep. 234; *Marbury v. Madison*, 5 U. S. (1 Cranch) 137, 2 L. ed. 60; *State v. Barbour*, 53 Conn. 76, 55 Am. Rep. 65, 22 Atl. 686; *Fuller v. Miller*, 32 Kan. 130, 4 Pac. 175.)

It was fully intended that when a chairman was elected, his term of office began, and he should serve as such until the second Monday in January, following the general election, when by law a new organization should be had. (*Shelden v. Board of Commrs.*, 48 Kan. 356, 29 Pac. 759, 16 L. R. A. 257; 29 Cyc. 1371.)

It is only in cases where a tenure of office is not prescribed by law that the courts have determined that such removal could be made. (*State v. Chatburn*, 63 Iowa, 659, 50 Am. Rep. 760, 19 N. W. 816.)

When the plaintiff was elected in June, 1915, as chairman to fill the vacancy, his term of office as chairman would not expire until January, 1917. (*Board of Commrs. of Pulaski County v. Shields*, 130 Ind. 6, 29 N. E. 385; *Liggett v. Board of County Commrs.*, 6 Colo. App. 269, 40 Pac. 475, at 477; *Chapman v. County Commrs.*, 79 Me. 267, 9 Atl. 728; *Farrier v. Dugan*, 48 N. J. L. 613, 7 Atl. 881; *Manley v. Scott*, 108 Minn. 142, 121 N. W. 628, 29 L. R. A., N. S., 652; 11 Cyc. 380, 388.)

The plaintiff never did give up the chairmanship of the board and McBride could not be found to be a *de facto* holder of that office, under the facts of this case. (*Morton v. Broderick*, 118 Cal. 474, 50 Pac. 644.)

In this action petitioner did not seek to try title to the office, but to inquire as to whether McBride was a *de facto* officer. The admission of facts in the petition and answer deprived the defendant McBride of any character as a *de facto* officer. (*Warner v. Myers,* 3 Or. 218; *Dew v. Judges of Sweet Spring District Court,* 3 Hen. & M. (Va.) 1, 3 Am. Dec. 639; *People v. King,* 127 Cal. 570, 60 Pac. 35.)

G. H. Martin, for Respondents.

Where the term of office is not fixed by law, the incumbent holds at the will of the appointive power, the power of removal being incident to the power of appointment. And such appointments, if made by a board, are not affected by a change in the personnel of the board. (*State ex rel. Childs v. Kiichli,* 53 Minn. 147, 54 N. W. 1069, 19 L. R. A. 779 ; *State v. Archibald,* 5 N. D. 359, 66 N. W. 234; *Wright v. Gamble,* 136 Ga. 376, Ann. Cas. 1912C, 372, 71 S. E. 795, 35 L. R. A., N. S., 866; *Carter v. Durango,* 16 Colo. 534, 25 Am. St. 294, 27 Pac. 1057; *Conwell v. Village of Culdesac,* 13 Ida. 575, 92 Pac. 535; 29 Cyc. 1371–1396.)

No rules were ever made or adopted by the board of county commissioners concerning their action as permitted by Rev. Codes, sec. 1917C, as shown by page 143, Session Laws 1913. In the absence of such rules, the court will not disturb the ruling of such a board having all the necessary authority to make rules, when it is acting within the scope of its power. The board had the right to reconsider the vote by which Prichard was elected chairman, and to defeat his election on a reconsideration thereof and to declare the chairmanship vacant and to elect a new chairman. (*People v. Common Council of Rochester,* 5 Lans. (N. Y.) 11; *Davies v. Saginaw,* 87 Mich. 439, 49 N. W. 667; *Landes v. State,* 160 Ind. 479, 67 N. E. 189; *Whitney v. Village of Hudson,* 69 Mich. 189, 37 N. W. 184; *Ashton v. City of Rochester,* 133 N. Y. 187, 28 Am. St. 619, 30 N. E. 965, 31 N. E. 334; *Crawford v. Gilchrist,* 64 Fla. 41, Ann. Cas. 1914B, 916, 59 So. 963; *Higgins v. Curtis,* 39 Kan. 283, 18 Pac. 207; *State v. Archibald,* 5

N. D. 359, 66 N. W. 234; 2 McQuillin, Municipal Corp., sec. 606; *Masters v. McHolland,* 12 Kan. 17, 23.)

The chairman of the board is not a civil officer. As such he would not be subject to removal under the provisions of Rev. Codes, secs. 7445 and 7459. (*Conwell v. Village of Culdesac,* 13 Ida. 575 at 580, 92 Pac. 535.)

In a *mandamus* proceeding the production of a certificate of appointment, or the certificate of election issued by the proper election or canvassing board, if the office is to be filled by election, is conclusive of the rights of the holder of the certificate to the office until the title to the office has been tried in a proper proceeding. (*State ex rel. Love v. Smith,* 43 Okl. 231, 142 Pac. 408, L. R. A. 1915A, 832; *State v. Blossom,* 19 Nev. 312, 10 Pac. 430; *Braidy v. Theritt,* 17 Kan. 468; *State v. Johnson,* 35 Fla. 2, 16 So. 786, 31 L. R. A. 357; *Conklin v. Cunningham,* 7 N. M. 445, 38 Pac. 170; *Stevens v. Carter,* 27 Or. 553, 40 Pac. 1074, 31 L. R. A. 342; *Ellis v. Armstrong,* 28 Okl. 311, 114 Pac. 327.)

BUDGE, J.—In this action the plaintiff below and appellant here filed his affidavit for a writ of mandate against defendants below and respondents here. An alternative writ of mandate was issued on July 10. 1915, and was made returnable on the fifteenth day of that month. This writ of mandate was sought by appellant for the purpose of restoring him to the position of chairman of the board of county commissioners of Bonner county, of which he and the respondents were members.

To the alternative writ of mandate, respondents answered. The cause was tried before the court without a jury upon the admissions made by the pleadings and a stipulation of facts entered into between counsel for the respective parties. Upon the facts admitted by the pleadings and the stipulated facts the court made findings of fact and conclusions of law, which findings recite substantially all of the facts relied upon by the parties to this proceeding, and upon which the judgment of the trial court is based.

The trial court found, among other things, as follows:

That the plaintiff, C. E. Hagman, and Don C. McColl were the duly elected and qualified members of the board of county commissioners of Bonner county on the second Monday of January, 1915; that at a regular meeting of the board on said date, Don C. McColl was duly elected chairman of said board; that the said McColl acted as the chairman of the board, performing the duties and functions thereof, up to June 15, 1915, when he resigned such chairmanship; that at a regular meeting of the board on the 15th day of June, 1915, the plaintiff Prichard was by a unanimous vote duly elected chairman of said board of county commissioners; that on the 5th day of July, 1915, McColl ceased to act as a member of the board of county commissioners of Bonner county by reason of the creation of Boundary county, including practically all of commissioner McColl's district No. 3, on which date defendant McBride qualified under appointment of the governor of this state as a member of the board of county commissioners of Bonner county; that after the election of plaintiff as chairman of the board of county commissioners of Bonner county on June 15, 1915, up to the time of the appointment and qualification of McBride as county commissioner of said county, the plaintiff acted as chairman of the board.

That immediately after the qualification of defendant McBride as commissioner, and at a regular meeting of the board, it was moved by Commissioner Hagman and seconded by Commissioner McBride that the action of the board in theretofore electing Commissioner Prichard chairman be reconsidered. Prichard refused to put the motion, whereupon it was put by Commissioner Hagman and carried by the vote of Hagman and McBride. It was thereafter moved by Commissioner McBride and seconded by Commissioner Hagman that the office of chairman be declared vacant. Prichard refused to put the motion, whereupon it was put by Commissioner McBride and the motion was carried by the affirmative vote of Hagman and McBride. It was then moved by Commissioner Hagman and seconded by McBride that McBride be elected chairman. Motion was put by Hagman and

carried by the affirmative vote of Hagman and McBride. Thereafter the defendant McBride assumed to act and has continued to act as the chairman of the board of county commissioners of Bonner county.

This action was brought by appellant Prichard against McBride and Hagman to determine whether Prichard or McBride is entitled to legally hold the chairmanship of the board of county commissioners of Bonner county, and to perform the duties and functions thereof. The trial court entered judgment in favor of respondent McBride. This is an appeal from the judgment.

Appellant relies upon three assignments of error:

First. The Court erred in holding that the office of chairman of the board of county commissioners was not a civil office and could be declared vacant at any time at the will of the majority.

Second. The court erred in holding that the defendant McBride did not unlawfully usurp and intrude into the office of chairman of said board, and that the defendants had not prevented and precluded the use and enjoyment by plaintiff of his office as county commissioner.

Third. The court erred in its conclusion of law that the qualifications and eligibility of McBride to be appointed as a county commissioner could not be inquired into or determined in this action.

The first and second assignments of error may be consolidated. They both involve but the one question, viz., the right of appellant to the position of chairman of the board of county commissioners of Bonner county.

We think that a solution of the question before us involves the construction of secs. 1906, 1908 and 1909, Rev. Codes.

Sec. 1906, *supra,* provides: "The term of office of a commissioner is two years."

Section 1908 provides: "The members of the board of commissioners must, at their first regular meeting on the second Monday of January next after their election, elect a chairman from their number."

Section 1909 provides: "A majority of the board constitutes a quorum. The chairman must preside at all meetings of the board, and in case of his absence or inability to act, the members present must, by an order, select one of their number to act as chairman temporarily. . . . . "

It seems to us that it was clearly the intention of the legislature, from the foregoing sections of the statute, to provide for the selection of a permanent chairman at the first meeting of the board, whose right to preside at all meetings should extend during his term of office as county commissioner, unless he voluntarily resigned as the chairman of said board, or was removed from, or ceased to be a member of, the board.

That a regularly elected chairman would have the right to resign as chairman or as a member of the board of county commissioners could not be seriously questioned. Such resignation, however, would not involve the existence of the board, and since, under the statute, two members of the board constitute a majority, upon the resignation of one of their members, either as a member of the board of county commissioners or as the chairman of said board, they undoubtedly would have the power to reorganize the board; and upon the election of one of their number as chairman his right to perform the duties and functions of said position would extend to the end of his term. Or, in the event of the permanent absence or inability of the regularly elected chairman to act, a majority of the board would be authorized to select his successor.

A construction of the statute to the effect that the commissioners may, at any or all of their regular meetings, make a change in the chairmanship of the board would result, in our judgment, in confusion and a lack of that orderly proceeding on the part of the board in dispatching public business which is contemplated by the statutes and which the electors in the county have a right to expect.

We do not think that the eligibility of Commissioner McBride could be inquired into in this proceeding, and the trial court did not err in so holding. But we are of the opinion that the trial court did err in holding that the appellant

was not the duly elected chairman of the board of county commissioners of Bonner county, of which position he had been wrongfully deprived, and that he had not been denied the right to exercise the duties and functions of such chairmanship.

Our conclusions are, and the judgment of this court is, that the respondent McBride does not hold, and is not entitled to hold, the position of chairman of the board of county commissioners of Bonner county, and that the appellant Prichard now holds that position and is entitled to hold it until the expiration of his term of office as county commissioner, unless he resigns or becomes legally disqualified.

The trial court is therefore directed to vacate and set aside the judgment heretofore entered quashing the alternative writ of mandate, and to issue a peremptory writ of mandate directed to the respondents, commanding them to admit appellant to the use and enjoyment of the position of chairman of the board of county commissioners of Bonner county. Costs are awarded to appellant.

Sullivan, C. J., concurs.

MORGAN, J., Dissenting.—I dissent from all the foregoing opinion except wherein it decides that the eligibility of a county commissioner may not be inquired into in a *mandamus* proceeding, and in that portion I concur.

This case was tried in the district court, and was appealed to this court, upon the theory that the position of chairman of the board of county commissioners is a civil office. This theory is erroneous.

Sec. 18 of art. 5 of our constitution, as amended, provides for the election of a prosecuting attorney for each organized county of the state, and sec. 6, art. 18, as amended, provides: "The legislature by general and uniform laws shall provide for the election biennially in each of the several counties of the state, of county commissioners, a sheriff, a county treasurer, who is *ex-officio* public administrator and also *ex-officio* tax collector, a probate judge, a county superintendent of

public instruction, a county assessor, a coroner and surveyor. The clerk of the district court shall be *ex-officio* auditor and recorder. No other county offices shall be established, but the legislature by general and uniform laws shall provide for the election of such township, precinct and municipal officers as public convenience may require, and shall prescribe their duties, and fix their terms of office."

It will be at once observed that there is no such office as that for which appellant is contending and that the legislature is prohibited, by the constitution, from creating it. Therefore, sec. 1908, Rev. Codes (quoted in the majority opinion), cannot be construed to be more than a direction to the board fixing the time and manner of designating one of its members to preside at its meetings.

I have reached the conclusion that the legislature has not fixed the tenure of office of the chairman of the board of county commissioners for two reasons: (1) Because it cannot be inferred from sec. 1909, Rev. Codes (quoted in the majority opinion), or from any other statute, that it was the legislative intent so to do; and (2) Because there is no such office. The chairman is merely a member of the board of county commissioners who has been designated by the board to discharge certain duties incidental to its chairmanship, and, no term during which he shall preside having been fixed, he cannot be heard to complain if the board sees fit to depose him and to designate another of its members to discharge those duties.

Even though it be assumed that the office of chairman of the board of county commissioners can be, and has been, created by the legislature, in order to reach the conclusion that it was the legislative intent to fix the tenure of that office, as found in the foregoing opinion, I must amend sec. 1908, Rev. Codes, and cause it to read: "The members of the board of commissioners must, at their first regular meeting on the second Monday of January next after their election, elect a chairman from their number, *who shall continue to act as such until his term of office as commissioner expires*," or I must read into sec. 1909, a provision, which is not there,

to the effect that, in case a vacancy occurs in the chairman-ship, the board must elect a chairman to fill out the unexpired term for which the members were elected as commissioners.

When the legislative intent has been fully and clearly expressed in a statute courts should not, by way of interpretation, add new provisions to it.

The case of *State ex rel. Childs v. Kiichli,* decided by the supreme court of Minnesota and reported in 53 Minn. 147, 54 N. W. 1069, 19 L. R. A. 779, is somewhat analogous to this. It arose out of a dispute as to who should be president of the city council of Minneapolis, and involved the interpretation of the portion of the city charter providing that "at the first meeting of the city council in January of each year, after a general state election, they shall proceed to elect by ballot from their number a president and vice-president. The president shall preside over the meetings of the city council, and during the absence of the mayor from the city, or his inability from any reason to discharge the duties of his office, the said president shall exercise all the powers and discharge all the duties of the mayor." Construing this provision the court said: "The sole purpose of the statute was merely to regulate a time when, and the manner in which, the city council should organize and elect their presiding officer, and to provide that, upon the happening of a certain contingency, such presiding officer, for the time being, whoever he might be, should perform the duties of mayor. There is nothing indicating an intention to create a city office distinct from that of alderman." After an able discussion the court further said: "Our conclusion is that the president of the city council of Minneapolis is not an 'officer' of the city, within the meaning of the city charter or the constitution, but that he is merely the officer or servant of the legislative body which elected him, and that as such, he is removable at the will or pleasure of that body."

I have been entirely unable to perceive the force of the reasoning which impelled the majority of the court to reach the conclusion stated in the opinion to the effect that a con-

struction of the statute permitting the board, at any regular meeting at which it sees fit to do so, to make a change in the chairmanship, would result in confusion and lack of orderly proceeding, on the part of the board, in dispatching public business. Had it been deemed to be expedient by the lawmaking branch of the government that the chairmanship of the board of county commissioners be a county office and that one elected to it should hold it two years, it would seem the framers of the constitution would not have prohibited it, and that the legislature would have left nothing to be inferred, but would have expressly provided for it.

Under the construction placed upon the law by the majority of the court, I am unable to conceive of any lawful method of getting rid of a chairman, who has once been chosen, during his term of office as commissioner, however unsatisfactory his services as a presiding officer may prove to be, and regardless of the lack of orderly proceedings on the part of the board, in dispatching public business, his retention as chairman may occasion, unless he be guilty of such gross misconduct in office as to warrant his removal from the board in a judicial proceeding.