THE STATE EX REL. C. DELANCY ALTON *vs.* ROBERT H. WATERMAN.

First Judicial District, Hartford, October Term, 1920.

WHEELER, C. J., BEACH, CASE, CURTIS and KEELER, JS.

The charter and ordinances of the City of Hartford (12 Special Laws, p. 982; Revised Ordinances, October, 1920, p. 13, § 10) authorize the Court of Common Council to fill vacancies in any town or "city office." *Held:—*

1. That the office of alderman from one of the wards was a "city office," a vacancy in which might be filled by the Court of Common Council.

2. That although the General Assembly could not, because of constitutional limitations, fill vacancies in its own membership, it might nevertheless direct how a vacancy in a municipal office which it had created should be filled, without thereby depriving the electors of the municipality of any constitutional or fundamental right, or violating the principles of representative government.

Argued October 5th—decided November 10th, 1920.

INFORMATION in the nature of *quo warranto* to test the legality of the respondent's appointment or election as an alderman of the City of Hartford, brought to and reserved by the Superior Court in Hartford County, *Maltbie, J.,* upon an agreed finding of facts, for the advice of this court. *Judgment advised for the respondent.*

It is stipulated that the respondent is a freeman of the City of Hartford and a resident of the sixth ward; that Newton C. Brainard, an alderman duly elected from the sixth ward, resigned his office on May 10th, 1920, and that at a regular meeting of the Common Council on June 14th, the following resolution was adopted by a majority vote: "Resolved, That Robert H. Waterman be and he hereby is elected alderman, representing the sixth ward, to fill the vacancy caused by the resignation of Newton C. Brainard." The respondent accepted the office, was duly sworn, and has ever since acted and still is acting as such alderman by virtue of the foregoing resolution.

The charter of the City of Hartford contains the following provision: "The Court of Common Council of the City of Hartford is hereby authorized to provide by ordinance or otherwise for the filling of vacancies in any office which may become vacant by a failure to qualify, or resignation, or death of the incumbent of any town or city office." Section 10 of the last revised ordinances of Hartford, as amended in 1918, is in part as follows: "The Court of Common Council shall, by

resolution, fill all vacancies in any office that may become vacant by failure to qualify, or resignation or death of the incumbent of any town or city office."

The question presented for our determination is whether the respondent is entitled to have and hold the office of alderman in the Court of Common Council in the City of Hartford.

*Arthur L. Shipman* and *Joseph P. Tuttle*, for the relator.

*Walter S. Schutz*, with whom was *Philip Roberts*, for the respondent.

BEACH, J. Two objections are made to the respondent's plea based on the charter and ordinance already quoted: that the office of alderman from the sixth ward is not a "town or city office"; and that it would violate the principles of representative government to permit the Court of Common Council to fill vacancies in its own ranks. Neither of these objections appears to us to be well founded.

For the purposes of candidacy and election, an alderman elected from a single ward may be described as a ward officer or ward alderman; but after election and in the exercise of his office, a ward alderman is as much a city officer as is an alderman at large. The wards have no separate legislative powers. In their relation to the Court of Common Council they are but election districts. The Common Council consists of city officers in the same sense that our senate consists of State officers, though elected from senatorial districts.

There are a few cases in which the courts have been constrained by the exigencies of the particular case to hold that a councilman was not a city officer within the meaning of the particular statute or charter under

consideration. In *Lambert* v. *Barrett*, 115 Va. 136, 78 S. E. 586, this was done in order to avoid a repugnancy between the provisions of the civil code and a subsequent statute. In *McFarland* v. *Gordon*, 70 Vt. 455, 41 Atl. 507, it was done to avoid giving the council power to fix the compensation of its own members. The other cases cited by the relator are not in point. *State* v. *Kiichli*, 53 Minn. 147, 54 N. W. 1069, refers only to the office of president of the Common Council; and because the election to that office by the Common Council conferred no power on the incumbent except that of presiding at the meetings of the Council, it was held not to be a public office or a city office, from which the relator could not lawfully be removed except for cause. The quotation from McQuillin on Municipal Corporations, Vol. 2, § 458, has no reference to the filling of vacancies in elective offices. It is based on *State* v. *Gorman*, 18 R. I. 313, holding that a town council could not appoint the respondent to an office to which the relator had already been lawfully elected at a town meeting.

In the absence of special conditions requiring a more restricted meaning to be given to it, the term "city officer" is commonly held to include an alderman. "So there are officers clearly and easily known, for the same reason, as city officers—such as mayor, recorder, aldermen and the like." *In re Whiting*, 2 Barb. (N. Y.) 513, 515. "An alderman is one of a board of municipal officers next in order to the mayor." *Crovatt* v. *Mason*, 101 Ga. 246, 253, 28 S. E. 891. The board of aldermen means the governing board of the city. *Oliver* v. *Jersey City*, 63 N. J. L. 96, 42 Atl. 782. Where the charter forbids a city officer to be interested in any contract with the city, the prohibition applies to an alderman or councilman. *State* v. *Kelly*, 103 Mo. App. 711, 77 S. W. 996.

It seems unnecessary to multiply authorities. An alderman exercising his office as a municipal legislator is necessarily a city officer, unless the exigencies of the particular case require that term to be given an artificially restricted meaning.

The relator contends that such an exigency arises in the present case, because, he says, that the charter and ordinance, providing for filling vacancies in city offices by resolution of the Common Council, cannot be construed as including members of the Court of Common Council elected from particular wards, without violating the principles of representative government. The argument seems to be that because the General Assembly cannot fill vacancies in its own ranks by resolution, it cannot authorize the legislative body of a chartered municipal corporation to do so. This is a *non sequitur.* The authority which creates an office may direct how any vacancies therein shall be filled. The General Assembly cannot fill vacancies in the House or Senate, because the offices of senator and representative were created by the people in convention assembled; and that authority has not. granted to the General Assembly any power of filling vacancies in its ranks, except in the case of a tie vote. On the other hand, the office of alderman from the sixth ward of the City of Hartford, as well as the privilege of voting for such an alderman, was created by the General Assembly, which may therefore direct any vacancy therein to be filled by the Court of Common Council, without depriving the electors of the sixth ward of any constitutional or fundamental right.

The General Assembly has in many instances expressly conferred on municipal courts of common council the right to fill vacancies caused by the death or resignation of a ward alderman. The charter of Stamford provides that the Common Council shall fill

any vacancy "in the ward members" from the legal voters in the ward. 16 Special Laws, p. 513. The same language is found in the charter of Bristol. 16 S. L. p. 355. The New Britain charter provides that "when any vacancy shall occur in any elective office of said city, the common council shall fill said vacancy; . . . if in the board of common council, from the electors of the ward in said city from which the former incumbent of said office was chosen." 12 Special Laws, p. 352. For similar provisions see Derby, 15 S. L. p. 988; South Norwalk, 15 id. p. 916; Orange, 15 id. p. 430; Shelton, 17 id. p. 648.

The list is not exhaustive, but it shows that the policy and practice of the General Assembly are consistent with the conclusions we have reached.

The Superior Court is advised to render judgment for the respondent.

In this opinion the other judges concurred.