(January 16, 1905.)

## ACKLEY v. PERRIN.

[79 Pac. 192.]

BOARD OF STATE PRISON COMMISSIONERS—ACTION BY MAJORITY OF MEMBERS—NOTICE OF MEETING.

1. The board of state prison commissioners as created by section 5 of article 10 of the constitution is granted the "control, direction and management of the penitentiaries of the state," and under such grant of power and authority they may meet at such times as they deem necessary.

2. A majority of the officers constituting such board may hold a meeting and transact such business as the board is authorized to transact.

3. A meeting of the state prison commissioners can be lawfully held by a majority of the board without giving notice to a member of the board who is at the time of calling and holding the meeting beyond the jurisdiction of the state.

(Syllabus by the court.)

ORIGINAL application by D. W. Ackley, warden of the state penitentiary, to compel the defendant to deliver to plaintiff possession of the state penitentiary, together with the inmates thereof, the keys, books and property belonging thereto. Writ granted.

John A. Bagley, Attorney General, and Wood & Wilson, for Petitioner, file no brief.

Henry Z. Johnson, Charles S. Kingsley and A. A. Fraser, for Defendant.

This is a proceeding to determine the right to exercise the office of warden of the state penitentiary. Under the statute the warden shall be appointed by the board of state prison commissioners and holds his office during the pleasure of the board. (First Sess. Laws, p. 22, sec. 4.) This board under the constitution, article 4, section 18, is composed of the governor, Secretary of State and attorney general, of which board the governor is chairman. (Second Sess. Laws, p. 155,

amending First Sess. Laws, p. 22, sec. 2.) There is no provision of the statute that in the absence of one member a majority thereof may act. Whatever power, therefore, was conferred by the legislature was conferred upon the three persons named as a body, and to them, as such, was delegated whatever power was given. Whatever action, therefore, they take, must be taken by them as a board. In other words, they act as an entirety. And should a majority assume to do the business of the board in the absence of the other members, their action would not be good under all of the decisions, unless the majority were, by the terms of the statute from which they derived their power, expressly authorized to act. (*Schwanbeck v. People,* 15 Colo. 64, 24 Pac. 575, 576.) In this connection it is significant that the board of state prison commissioners is the only state board that the legislature has not seen fit to delegate authority to a majority thereof to act. In the cases of the board of pardons, the board of equalization, the board of examiners, the board of land commissioners, the board of regents, the boards of trustees of the normal schools, and the soldiers' home, and, lastly, the boards of county commissioners, a majority are expressly authorized to act. Again, the statute prescribes that the board of prison commissioners shall meet quarterly; and when in special session the time and business thereof. At no other time can this board meet under the authorities, unless all are voluntarily present, or if a majority are present, that notice has been served on the absent member, or at least an attempt has been made to serve him with notice of the proposed meeting. Especially is this true when the board attempts to meet at a time other than the time prescribed for meeting by the statute. (*People v. Carver,* 5 Colo. App. 156, 38 Pac. 334.) The record in this case shows affirmatively that the meeting herein was at a time other than prescribed by statute and that no notice was given, or honest or reasonable effort made to give notice to the absent member. The record also shows that the meeting was not an adjourned meeting of a regular meeting. That being so, it follows as a necessary result that their acts which they assumed to perform were unauthorized and void. (*Jackson v. Collins,* 41 N. Y. St. Rep. 590, 16 N. Y. Supp. 651, 653; *In re*

*Bradley,* 49 N. Y. St. Rep. 530, 21 N. Y. Supp. 167; *School Dist. v. Bennett,* 52 Ark. 511, 13 S. W. 132, 133, adhered to in *Burns v. Thompson,* 64 Ark. 489, 43 S. W. 499; also, *School Dist. No. 49 v. Adams,* 69 Ark. 159, 61 S. W. 794; *Dunn v. Sharpe,* 4 Idaho, 98, 35 Pac. 842; *Conger v. Board of Commrs.,* 4 Idaho, 740, 48 S. W. 1064; *People v. Parker,* 3 Neb. 409, 19 Am. Rep. 634-637; *State v. Graham,* 26 La. Ann. 568, 21 Am. Rep. 551.)

AILSHIE, J.—This is an application for a writ of mandate to C. S. Perrin to compel him to deliver up the possession of the Idaho state penitentiary, together with the inmates thereof, the keys, books, moneys and property thereunto belonging to the plaintiff, Ackley. The application is based on the proceedings of the board of state prison commissioners had on the twenty-first day of November, 1904. A copy of the record of their proceedings is attached to the petition. The answer of the defendant puts in issue the regularity and legality of the meeting so held and the proceedings had thereat. It admits that the proceedings referred to in the complaint were had, but denies that the action taken by the attorney general and Secretary of State were acts of the state prison board, or that they constituted such board at the time and in the manner they assumed to act. This matter is presented on a motion for judgment on the pleadings. It is conceded that if the proceedings were the proceedings of the board of state prison commissioners, that the removal of the warden was legal. It is unnecessary for us to go into a detailed statement of the contentions of both parties.

By section 5, article 10 of the state constitution, the governor, Secretary of State and attorney general are constituted a board to be known as the state prison commissioners, and are given "the control, direction and management of the penitentiaries of the state." It also provides that "the governor shall be chairman and the board shall appoint a warden who may be removed at pleasure." It will thus be seen that the constitution confers on this board the management and control of the state penitentiary. That being true, the legislature has not the power to

take from that board the management and control of that institution, or make any rules and regulations for the government of the board that would in any way interfere with the efficient management and control of that institution. The authority to legislate in aid of the full and complete exercise of this power is clearly recognized by section 18 of article 4 of the constitution, but the right conferred upon the legislature by this section cannot be employed to diminish or abridge any of the powers conferred by section 5 of article 10.

The only question presented by the pleadings for our consideration is whether or not the action of the · Secretary of State and attorney general had at the time and in the manner they are shown by the pleadings to have acted is in law the legal action of the board of state prison commissioners. Article 10 of the constitution is dealing with "Public Institutions," and while section 5 makes no provision as to the time of meeting nor the manner of calling meetings, nor the manner of exercising the "control, direction and management" delegated to them, it is significant that section 6, immediately following this provision, provides for directors of the insane asylum, and in prescribing the powers of that board uses the same language, namely, that they shall have the "control, direction and management of the asylum,"·and concludes the sentence with the provision that it shall be exercised under such regulations as the state legislature may provide. This provision following immediately after the creation and granting of authority to the board of state prison commissioners implies to my mind that the framers of the constitution did not mean to authorize the legislature to in any way abridge or curtail the exercise of any of the powers granted to the board of state prison commissioners. The first legislature that convened after the adoption of the constitution, by act of February 3, 1891, enumerated a large number of duties to be performed by the prison board, and in the same act, by section 6 thereof, provided that the board should hold quarterly meetings but nowhere in the act did they specify any date on which meetings should be held. It is true that by section 13 of that act certain things are required to be done by the board on the first

Monday in December, and presumably at a meeting, but a meeting as such is not mentioned. This act enumerates duties to be performed which of necessity require that meetings be held much oftener than quarterly, and it is our opinion that the legislature in requiring quarterly meetings to be held by the board had no intention or purpose of limiting the power of the board to these meetings only. The board of state prison commissioners is a board created by the constitution and selected by the people every two years. They are responsible to no appointive power, but are accountable directly to the people, and it seems to us that this is one of the controlling reasons why the framers of the constitution left the exercise of the powers granted to this board to their judgment and discretion. While the legislature have the undoubted right to point out a method of exercising these powers and impose special duties upon them, we are satisfied that the legislative department of the government would have no power or authority to limit or in any way interfere with the full and complete exercise of the powers and duties conferred by the constitution, and we do not think they have attempted to do so. This phase of the question is, however, not a serious matter in this case, for the reason that it is admitted by counsel for the defendant that under certain conditions the board might meet at any time.

It is contended, however, that the full membership of the board should be present, or notice thereof should be given. The serious question, to our minds, is as to the manner of calling these meetings and whether or not notice should be given. Neither the framers of the constitution nor the legislature have seen fit to make any provision for the time of holding meetings, nor the method nor manner of calling them. They have required no notice, and the question arises as to whether or not the court can, by construction or otherwise, require the giving of·a notice; and if so, what kind of notice shall be given; and what shall be the manner of service and the time intervening between the service and the meeting—and a host of other such questions would necessarily arise. As to the propriety and wisdom of all the members of the board being notified of meetings, and having an opportunity to attend, there can be no question, but as to the right of the courts to interfere with

the exercise of the judgment of the board or attempt to control their meetings or prescribe a method and manner of convening them, there is most serious doubt.

It appears to me that it was the intention of the framers of the constitution to grant exclusive power to this board in all these matters, and with the exercise of that power within the scope of their duties, the courts cannot interfere. The members of the board are accountable to the people, and if they exercise these powers unwisely the people will call them to account. It is true there may be special instances where it will result in working a great hardship, and possibly an injustice, on some person or persons, but that is one of the consequences of the service and is a risk which must necessarily be assumed by those who undertake the service.

If we should require notice, then by analogy it might be such notice as is required in other similar matters under the statute; this might be done when the members of the board are within the state, but we would still be without a means of service of notice upon a member beyond the jurisdiction of the state. I am of the opinion that in such case the court is powerless to require notice of any kind. If I could find authority for the requirement I should be very much inclined to hold that notice should be given. The authorities cited do not cover this case for the reason that in all those cases the boards whose actions were questioned were creatures of the legislature, and their meetings and methods of acting were prescribed by statute.

Section 14 of the Revised Statutes provides that wherever joint authority is given to three or more public officers or other persons to act, that the same shall be construed as giving such authority to the majority of them, unless it is otherwise expressed in the act giving the authority. This statute, it may be justly said, does not eliminate the question of notice where the constitution or statute requires such, but it is strong evidence of the legislative intent to authorize a majority of all boards deriving their powers from the legislature to act in every matter over which they have authority, unless otherwise expressed by statute. It would seem that this authority might

extend to the determination as to the manner and method of
calling or holding a meeting where such question has not been
settled by law. We hold that a meeting of the state prison
commissioners can be lawfully held by a majority of the board
without giving notice to a member who is at the time of call-
ing and holding the meeting beyond the borders of the state.
It is conceded by all parties to the action that if the meeting
of November 21, 1904, was a legal and lawful meeting of the
state board of prison commissioners, they could remove the war-
den at pleasure and without assigning any reason, and appoint
his successor. These things were done—the defendant was re-
moved as warden and the office declared vacant, and the peti-
tioner was appointed to fill the vacancy.

It follows from what has been said that a peremptory writ
of mandate should issue as prayed for, and it is so ordered.
Writ issued. No costs awarded.

Sullivan, C. J., concurs.

STOCKSLAGER, J., Dissenting.—I do not question the
power of the board of prison commissioners to remove the war-
den of the penitentiary at a regular meeting of such board.

I also think it is beyond dispute that a majority of the board
may remove the warden at either a regular or special meeting.
The only serious question presented to us is the power of the
Secretary of State and the attorney general to act in the ab-
sence of the governor, who is by law the president of the
board, in the absence of any showing that an effort of any kind
had been made to procure his presence. It is shown that the
president of the board was absent from the state, but there is
an entire failure to show that any means were resorted to to
notify him of the intended meeting and that his presence was
desired. If there had been a showing that an effort had been
made to locate the governor and procure his presence, and that
all efforts had failed, I think it would be sufficient to warrant
the action of the majority of the board to meet and transact
such business as seemed a pressing necessity. So far as the
sufficiency of the notice is concerned, I am of the opinion that
a telegram, a letter or a personal notice by telephone inform-

ing him of the urgent necessity of a meeting of the board, giving him sufficient time to reach the place designated as the meeting place of the board, would be sufficient in law. In other words, if it were shown that the president of the board had been given an opportunity to be present, and refused or neglected to attend the meeting, all parties interested would be estopped from complaining of the action of the majority of the board. I am not without authority in insisting that the majority of the board could not legally act without an effort to have the third member present. In *School Dist. No. 42 v. Bennett,* 52 Ark. 511, 13 S. W. 132, the principle under consideration here is discussed. It is said: "The public select each member of the board of directors, and is entitled to his services. This it cannot enjoy if two members can bind it without receiving, or even suffering, the counsel of the other. Two could if they differed with the third, overrule his judgment, and act without regarding it; but he might, by his knowledge and reason, change the bent of their minds, and the opportunity must be given him. We conclude that two directors may bind the district by a contract made at a meeting at which the third was present, or of which he had notice; but no contract can be made except at a meeting, and no meeting can be held unless all are present, or unless the absent member had notice."

To the same effect, see *Burns v. Thompson,* 64 Ark. 489, 43 S. W. 499; *School Dist. No. 49, Falkner Co. v. Adams,* 69 Ark. 159, 61 S. W. 793; *Jackson v. Collins,* 41 N. Y. St. Rep. 590, 16 N. Y. Supp. 651-653.

A very interesting and instructive case is reported in 5 Colo. App. 156, 38 Pac. 332, entitled *People v. Carver.* The action was for the purpose of trying the title to the office of general road overseer of Douglass county. The statute provides for the division by the board of county commissioners of their counties into suitable road districts as in their judgment will best subserve the interests of the people, and that at their January meeting shall by resolution appoint a general road overseer for the county who may be removed by the board for reason satisfactory to them. It seems the relator was removed by two members of the board. It is said two of the commis-

sioners after the organization assumed to hold a meeting at which the third was not present, and of which he had no knowledge, and adopted a resolution removing the relator and appointing the defendant. This action cannot be upheld. It was clearly without authority of law. The removal and appointment were both illegal. The Colorado court goes to the extent of holding that an officer cannot be removed at a special meeting, unless all members are present. The language of the opinion is as follows: "But as the statute does not confer upon any one member the authority to call such meeting, and as it belongs to the board alone to judge of the propriety of holding it, and their judgment can be expressed only after they come together, to make the meeting one at which such expression can be given, all the members must be present."

The case of *Schwauback, Auditor, v. Smith*, reported in 15 Colo. 64, 24 Pac. 575, holds to the same rule.

In *Schuerman v. Territory of Arizona*, 184 U. S. 342, pp. 353, 354, 22 Sup. Ct. Rep. 406, 46 L. ed. 580, an opinion by Mr. Justice Peckham on appeal from the supreme court of Arizona Territory, we find a similar question discussed. It is shown that a board known under the territorial statute as the "Loan Commissioners of the Territory of Arizona," consisting of the governor, auditor and secretary of the territory, should constitute such board. It seems that two members of this board funded certain bonds of the territory during the absence from the territory of the third member. Mr. Justice Peckham says: "The record does not show that the absent commissioner had not been notified to attend the meeting at which the bonds were funded. It is not to be presumed that notice of the intended meeting was not given. Under the provisions of the territorial act the proceedings of the board of loan commissioners were legal." It will be observed that under the territorial statute creating this board, subdivision 2 of section 2932 provides for action by a majority of three or more public officers to whom a joint authority is given. In my opinion the peremptory writ of mandate should have been denied.