(November 11, 1907.)

## R. CONWELL, Plaintiff, v. THE VILLAGE OF CULDESAC, a Municipal Corporation, Defendant.

[92 Pac. 535.]

VILLAGE GOVERNMENT—POWER TO REMOVE POLICE OFFICER—JURISDICTION OF BOARD OF TRUSTEES.

1. In the absence of legislation indicating a contrary purpose or intention, the authority granted a municipal corporation to appoint a police officer whose term is not fixed by law carries with it the implied concurrent power to discharge such officer.

2. The remedy provided by sections 7445 to 7459, Revised Statutes, inclusive, for the removal of civil officers is not an exclusive remedy, nor does it prohibit village trustees from removing appointive officers.

3. The removal of a village marshal by the board of trustees is not such an exercise of judicial power as to be repugnant to the provisions of section 2 of article 5 of the constitution.

(Syllabus by the court.)

ORIGINAL application for writ of prohibition. *Demurrer to petition sustained, writ denied, and petition dismissed.*

A. J. Green, and Stewart S. Denning, for Petitioner.

Where the law of the state provides a remedy for the removal of the officer, who has been guilty of willful and corrupt misconduct, and also for extortion and refusing to per-

form the duties of his office, and the remedy is complete and drastic, and no power of amotion has been granted by the state by general law or otherwise, but the history of the legislation of the state shows that such power has been expressly withheld, either on account of the state constitution or the general policy of the state, whenever the municipal corporation assumes the power of amotion or removal, then they act without jurisdiction and their acts are void.

It was the intention of the legislature of the state of Idaho to take this power of amotion out of the hands of the several boards of trustees and the city council (except in cases of policemen in cities of the second class), so that they could not by any majority play politics and shuttlecock with those offices. (*Coffey v. Superior Court,* 147 Cal. 525, 82 Pac. 75, 2 Cal. App. 453, 83 Pac. 580; *Folsom v. Conklin,* 3 Cal. App. 480, 86 Pac. 724.)

John Green, and Edward S. Fowler, for Defendant.

The power of amotion, or removal of a corporate officer from his office, for just and reasonable cause, is one of the common-law incidents of all municipal corporations. (1 Dillon's Municipal Corporations, 3d ed., sec. 240; *Richards v. Clarksburg,* 30 W. Va. 491, 4 S. E. 774; *Croly v. Board,* 119 Cal. 229, 51 Pac. 323-325; 1 Smith's Modern Law of Municipal Corporations, sec. 200; *State v. Walbridge,* 119 Mo. 383, 41 Am. St. Rep. 663, 24 S. W. 457; *Mayor v. Grayson,* 104 Ga. 105, 30 S. E. 693; *Coffey v. Superior Court,* 147 Cal. 525, 82 Pac. 75.)

There are certain provisions in the Penal Code for removal of public officers. One of these is by presentment by the grand jury. (Rev. Stats. 1887, sec. 7445.) In Revised Statutes, section 7459, it is provided that an officer may be removed by the court for collecting fees or for refusing or neglecting to perform the duties of his office.

These provisions are not exclusive. There is no inconsistency or conflict between the right of a municipal board to remove unworthy officers, and the right of the court to remove them upon information by the grand jury, or upon

a verified information by any person. (*Coffey v. Superior Court, supra.*)

This procedure, if exclusive, would provide small protection to municipal corporations against corrupt officials. It cannot be presumed that the legislature intended to make exclusive a remedy which, by being exclusive, would, in its practical working, defeat its own object.

In section 1881, Political Code of 1901, it is provided that the board of trustees may also appoint such night watch and police as may be necessary. Under this section no office of city marshal, or of street commissioner is created. There is no other section of the code creating any such office. Consequently, the office which plaintiff and relator claims to hold must be an office created by ordinance, or be no office at all.

If they had authority to appoint a street commissioner, they had it merely as an inherent power which every governing board of a municipal body must have. If they had authority to appoint a city marshal, they had such authority either as an inherent power of their body, or because the office would perhaps come under the term night watch or police. In such case, the city council can remove the officers appointed, at pleasure, either with or without cause. (*Mathis v. Rose*, 64 N. J. L. 45, 44 Atl. 875.)

In the case at bar there is nowhere any statute indicating that the officers appointed shall hold office for one year, or for any specified time.

The power to remove from office is incident to the power to appoint, in the absence of some provision of law or an act of the legislature fixing the duration of office and the mode of removal. (23 Am. & Eng. Ency. of Law, 435; *Parish v. City of St. Paul*, 84 Minn. 426, 87 Am. St. Rep. 374, 87 N. W. 1124.)

AILSHIE, C. J.—This is an original application for a writ of prohibition against the board of trustees of the village of Culdesac. The petitioner alleges that the board appointed him marshal and street commissioner for the period of one year, and that they thereafter summarily removed him, where-

upon he applied to the district court in and for the second judicial district and was reinstated by order of the court. Charges were thereafter filed with the board against petitioner, and they served notice on him of the time and place fixed for a hearing on the accusation. He then applied to the district court for a writ of prohibition against the board taking further action, and his petition was denied. He then applied to this court. The contentions made by the petitioner are that the board of trustees have no further jurisdiction to hear or consider charges made against him, and no authority or power to discharge him for any cause until the expiration of the term for which he was appointed, and that the only way in which he can be removed from office is in accordance with the procedure prescribed in chapter 2, title 2, part 2 of the Penal Code (Rev. Stats., secs. 7445-7459).

The first thing to be considered is the authority of law under which the petitioner was appointed. By act of March 11, 1901, the legislature amended section 47 of the act of February 10, 1899, entitled, "An act to provide for the organization, government and powers of cities and villages," and as amended the section reads as follows: "Such board of trustees shall appoint a clerk, treasurer and attorney, and they may also appoint such night watch and police as may be necessary, who shall have power to arrest all offenders against the law of the state, or of the village, by day or by night, in the same manner as the sheriff or constable, and keep them in the village prison or other place, to prevent their escape, until trial can be had before the proper officer." It will be observed from the foregoing section that the board of trustees had the authority to appoint "such night watch and police" as they might deem necessary. No fixed period of service is established by the legislature; neither has our attention been called to any provision of the statute in which mention is made of grounds on which such officer may be removed, nor of the power or authority to remove such officer. In the absence of any legislation on the subject, the general and usually accepted principles of law and construction must prevail. It is generally held by the authorities and text-writers.

that in the absence of legislation on the subject of removal and grounds therefor, the power to remove is incident to the power to appoint, and that the authority to appoint an officer carries with it the resultant power and authority to remove him. (23 Am. & Eng. Ency of Law, 2d ed., 435; *Coffee v. Superior Court of Sacramento County,* 147 Cal. 525, 82 Pac. 75; *Parish v. City of St. Paul,* 84 Minn. 426, 87 Am. St. Rep. 374, 87 N. W. 1124.)    The village is vested with power to exercise police authority within its corporate limits and it is also vested with power to supervise and keep in repair its streets and alleys; for the exercise of these powers it must necessarily have policemen, or a city marshal, as petitioner has been designated in this instance, and also some person to inspect and keep watch of the public thoroughfares and keep them in repair.    These various duties may well be performed by one and the same person, as the village has attempted to have done in this case, Since the statute has not fixed the term of his employment, the board may employ him for a day, week, month, or for a year, as it has done in the petitioner's case, but the fact of such employment does not elevate the employee above the power, authority and superintending control of the board that appointed him.    They might cease to need his services, or he might so conduct himself in the discharge of his duties as to be a menace to the peace and good order of the community. The statute being entirely silent on the question, it is fair to look to the results that would follow if petitioner's contention was to be upheld in determining the probable legislative intent in enacting this section of the statute.    The purpose for which they authorized the appointment of a night watch and policeman was to maintain peace, quiet and good order within the corporate limits of the village and afford protection to life and property.    To authorize the board to appoint such officers or employees, and on the contrary give them no power or authority whatever to remove them, might result in many instances in accomplishing the very reverse of the evident legislative intention authorizing the appointment of such officers.    If a police officer could discharge his duties to his own liking and in disregard of law and the

orders and directions of the board of trustees, he might become insolent, insulting and menacing to the citizens, and yet hold his office independent of the board of trustees and against their will. This case differs from that class of cases where the statute or charter specifies a particular office, and provides for the election, appointment or employment of an incumbent for a fixed period of time. It also differs from those cases where the statute enumerates the causes for which a removal may be made. Here it was evidently the intention of the legislature to leave the municipality free and unhampered in the matter of exercising its police control and authority within its corporate limits, and to authorize the board of trustees to employ and remove police officers at such times and in such manner as they might deem in the interest of the public service. This case is not in line with the case of *Village of Kendrick v. Nelson,* 13 Idaho, 244, 89 Pac. 755, for the reason that the grounds of removal were there prescribed by the legislature.

It is contended, however, by the petitioner that sections 7445 to 7459, Revised Statutes, which prescribe the causes and procedure for the removal of civil officers, apply t. his case and are exclusive, and that those provisions of the statute furnish the only remedy the village has for causing his removal. We cannot agree with this contention. The remedy there prescribed is at best nothing more than a concurrent and cumulative remedy with that being pursued by the board of trustees. In other words, they may exercise incidentally the power of removal which accompanies the power of appointment, or they might pursue the remedy pointed out by statute. The contention that the statutory remedy is exclusive is out of harmony with both the spirit and purpose of the statute authorizing the incorporation of cities, towns and villages. We do not think it was ever intended by the legislature that municipal authorities should go into a district court every time they want to discharge an appointive officer or employee. In fact, at the time sections 7445 to 7459 were enacted, the territory had no general incorporation law for cities, towns and villages, but, on the

contrary, our cities and towns were incorporated by special charter, and special powers were granted the municipal authorities with reference to the employment, removal and discharge of local officers. We doubt, however, if it was ever within the contemplation of the lawmakers that these sections of the statute should have any application to appointive officers within municipalities.

We think the board of trustees have an undoubted right to proceed with the investigation as to the conduct of the petitioner, and if they deem it proper and necessary for the good of the village they represent to discharge the petitioner, they may do so. It is not the usurpation of a judicial power of the state in violation of section 2, article 5 of the constitution. It is only the exercise of an administrative and governmental function belonging to the municipal corporation. The petition in this case fails to state a cause of action which would entitle the plaintiff to the writ prayed for. The demurrer is sustained. The petition is dismissed and writ denied. Costs awarded in favor of the defendant.

Sullivan and Stewart, JJ., concur.