382 P.2d 764

**Joe GOWEY, Plaintiff-Appellant,**

**v.**

**Evan SIGGELKOW, Defendant-Respondent.**

**No. 9278.**

Supreme Court of Idaho.

June 7, 1963.

J. M. Lampert, Givens, O'Leary, Doane & Givens, Boise, for appellant.

Allen R. Derr, Boise, for respondent.

TAYLOR, Justice.

Plaintiff (appellant) brought this action under authority of I.C. § 6–602 to procure a judgment adjudging him to be the rightful chairman of the board of trustees of the village of Garden City, in Ada county, alleging that defendant (respondent) had intruded into and usurped that office.

Upon motion of the defendant, the action was dismissed on the ground "that the complaint fails to state a claim upon which relief can be granted and that there is no genuine issue as to any material fact."

Plaintiff brought this appeal from the judgment of dismissal.

In the complaint it is alleged that the village of Garden City was, at all times involved, a municipal corporation governed by a board of trustees; that the members of the board were Robert Lawrence, Evan Siggelkow, Dortha Bills, Harold Conn and Joe Gowey; that prior to June 4, 1962, defendant Siggelkow was the duly chosen and acting chairman of the board; that on June 4, 1962, at a regular meeting of the board, defendant was removed as chairman of the board; that on July 2, 1962, at a regular meeting of the board, plaintiff was duly chosen as chairman of the board; that the defendant has refused and continues to refuse to acknowledge his removal as chairman of the board, and continues to exercise the functions of chairman and to usurp and intrude himself into that office, to the exclusion of the plaintiff.

Paragraph VI of the complaint is as follows:

"Leading up to, and as a basis for defendant's removal as Chairman of the Board of Trustees, were many acts by the defendant of misfeasance and malfeasance in office, all of which kept the village of Garden City and its governing body in turmoil, obstructed the orderly transaction of village business, and generally created a condition of confusion and chaos. Such actions include, but are not limited to, the following:

"(a) Prior to the Board of Trustees' meeting held October 2, 1961, Trustees Uhl (no longer on the Board), Lawrence and Siggelkow conspired to frustrate and worry the other two members of the Board by having Uhl orally resign and leave the meeting with the intention of having him return at a later date, after a replacement had been chosen, and claim his seat as a trustee;

"(b) The Chairman has regularly attempted to override the majority of the Board and declared that only a court order would alter his position, typical expressions being such as was made at the meeting on November 6, 1961, as follows:

" 'The Board of Trustees are run by the chair, and his word is law, until such time as you take court action.'

and at the meeting June 4, 1962, as follows:

" 'The chairman presides over the meeting, and the Trustees can get a court order, if they don't like his ruling.'

"(c) At the regular meeting of May 7, 1962, the Board of Trustees, by majority vote, discharged a policeman, and the Chairman in violation of said action ordered said police officer to re-

port for duty, and on May 23, 1962, wrote letters to various Village officials to place said discharged police officer back to work and on the payroll, also directing said policeman to report for duty, as a result of which said police officer is now claiming wages for the time since his dismissal and another law suit is in the making.

"(d) On June 4, 1962, said Chairman ruled that when a motion is made and seconded and objection is made to its consideration, it requires a two-thirds vote (four votes) to consider the motion and then refused to carry out the orders of the Board. Another law suit resulted and needless expense to the taxpayers of the village.

"(e) The Chairman has refused to carry into effect the directives of the majority of the Board, referring to them and stating, 'No mob is going to rule this city.'

"(f) At the meeting of June 4, 1962, the Chairman had requested Trustee Bills to resign and ordered the Village attorney to bring legal action to enjoin said trustee from doing certain acts declared by the attorney to be proper. The attorney stated he would bring action only upon direction of a majority of the Board of Trustees, and the Chairman then stated, 'The Board has

nothing to do with it; the Chair has ordered it.' "

Attached to the complaint and made a part thereof by reference are minutes of the meetings of the village board held on June 4, 1962, and on July 2, 1962.

Pertinent parts of the minutes of June 4, 1962, are as follows: A bill for the payment of services rendered by the attorney for the village was presented;

"Motion was made by Trustee Bills that said bill for legal services be allowed and clerk be authorized to issue warrant for same. Motion was seconded by Trustee Conn.

"Trustee Lawrence objected to claim and *undo* formal objection to the motion for payment, to the chairman. Chairman Siggelkow called for a vote on the question of sustaining the objection. Trustee Lawrence and Siggelkow voted to sustain the objection, and Trustee— Conn, Bills and Gowey voted against sustaining the objection.

"Chairman Siggelkow declared the objection sustained for lack of two-thirds voting in favor of overruling the objection and said thus the original motion to pay said claim is dismissed. On request of Trustee Conn, the Village Attorney gave his opinion that Chairman Siggelkow was in error in his interpretation of the rule vs. objec-

tions to consideration of motions he referred to in Robert's Rules of Order.

"Trustee Bills appealed the decision of the chair, declaring the motion to pay said claim as dismissed; appeal seconded by Trustee Conn. Chairman refused to call for vote on this appeal and Trustee Bills then called for vote on her appeal, and Trustees Conn, Bills and Gowey voted against the ruling of the Chairman, and Trustee Siggelkow and Lawrence did not vote, stating there was nothing to vote on.

"Trustee Bills then called for vote on her original motion to pay the attorney's bill and Trustees Conn, Bills and Gowey voted in favor of said motion to pay said bill; Trustee Siggelkow and Lawrence did not vote, stating as before there was no motion to vote on.

  . \*  · \*  ·\*   \*    \*    \*

"Regard to rehiring of Ernie Lightfield:·

"Chairman Siggelkow brought up the question of the status of Ernie Lightfield, stating that he had been rehired by the Chairman and referring to letters he sent in this regard to Village employees.

"Trustee Conn· introduced the following resolution and made a motion that it· be passed. The motion was· seconded by Trustee Bills:

" 'Be it resolved that:

" 'Whereas, the duties of Village Attorney, Village Clerk and ex- (word unreadable) Treasurer, and the Chief of Police, have their powers and duties outlined by State Statutes and ordinances, as adopted by the Board of Trustees of the Village, and they and each of them are appointed by majority vote of said Board of Trustees, and:

" 'Whereas, said officers are answerable only to said Board of Trustees, for the performance of their duties, and can only be discharged by majority vote of said Board, and:

" 'Whereas, the writing of letters to said officers, directing what they shall or shall not do, by any individual member of said Board of Trustees, leads only to confusion and uncertainty and interferes with an orderly administration of the affairs of the Village Government,·

" 'Now therefore, it is· ordered that each of said Officers disregard any order· from any one of the Five Trustees, either in writing or orally, unless accompanied by the· order of two other members of said Board, or unless such official shall be served by Notice ·from the Village Clerk that certain direction is given by action of majority vote at a meeting of said

Board with copy of the Resolution or Ordinance.'

"Chairman Siggelkow ruled the resolution out of order. Trustee Conn appealed from the ruling of the Chair. Chairman Siggelkow called for a vote on the appeal. Voting against the ruling of the Chair were Trustees Conn, Bills, Lawrence and Gowey; Trustee Siggelkow voting for the ruling. Upon the Chairman's refusing to call for a vote on the motion to pass the resolution, Trustee Conn then called for a vote. Voting to pass the resolution were Trustees Bills, Conn and Gowey. Voting against said motion were Trustees Lawrence and Siggelkow.

"Motion was made by Trustee Conn and seconded by Trustee Gowey that: 'Chairman Siggelkow, having persistently and on numerous occasions, assumed a dictatorial attitude, disregarding and attempting to overrule and circumvent the express orders of a majority of the Board of Trustees, and referring to the motions of said majority members as "kid stuff" and "ridiculous" and referring to said majority members as *"neting* like a bunch of skunks", and ordering an employee, discharged at a regular meeting of the Board by a majority vote, to be placed back on the payroll by the Village Clerk, and directing the head of the department to place said discharged employee back to work—refusing to call special meetings of the Board of Trustees to settle a problem wherein he and a majority of the Board have differing opinions, and malfeasance as executive in the doing of a wrongful and unjust act which as chairman of the Board of Trustees he had no right to perform. As such officer it is his obligation and duty to cause the ordinances and resolutions of the Village Board to be put into effect.

"'Now therefore, I move that Chairman Evan Siggelkow be removed as chairman of this Board and the Village Attorney be directed to take such legal action as he may deem proper or necessary to bring about his removal as chairman of the Board of Trustees.'

"Chairman Siggelkow ruled the motion 'completely out of order' and said 'no mob is ·going to rule this city'. Trustee Lawrence made formal objection to the motion, and Chairman Siggelkow called for a vote on sustaining the objection. Voting in favor of sustaining the objection were Trustees Lawrence and Siggelkow. Voting against sustaining the objection were Trustees Bills, Conn and Gowey. Chairman Siggelkow declared the motion dead on the grounds that it takes a

two-thirds majority to override the objection.

"Determining that Chairman Siggelkow would not call for a vote of the motion, Trustee Conn called for a vote. Voting in favor of the chairman's removal were Trustees Bills, Gowey and Conn. Declaring that there was no motion, Trustees Lawrence and Siggelkow did not vote."

Chairman Siggelkow advised that he had received complaints that equipment and personnel of the village were being used in a private housing development by one of the trustees and asked the village attorney for a written opinion on the subject, previously requested. The written opinion by the attorney, as set out in the minutes, was to the effect that the equipment was leased by trustee Bills on a contract authorized by ordinance enacted by the board, and at the rental fixed by the board, and that such rental and use were lawful. The minutes continue as follows:

"Following the reading of the opinion, Chairman Siggelkow said this was 'the wrong opinion' and called for a motion that 'the (unreadable word) by Trustee Bills, of Village equipment and crews be investigated and the propriety thereof be determined.' Trustee Lawrence made this motion. There being no second, Chairman Siggelkow appointed Trustee Lawrence chairman pro tem and changed chairs with him. Trustee Siggelkow then seconded the motion, and, changing chairs again with Trustee Lawrence, called for a vote on the motion. Voting in favor were Trustees Lawrence and Siggelkow. Voting against were Trustees Conn and Gowey. Trustee Bills abstained from voting. Chairman Siggelkow declared that the motion was carried 'because it was not defeated'. Trustee Conn asked for an attorney's opinion, who said that a two-to-two vote kills a motion. Chairman Sigggelkow asked Carl Smith to head the committee to investigate Trustee Bills, and Mr. Smith said it apparently hadn't been determined that there was to be an investigation. Chairman Siggelkow said it had just been passed by the Board, and Trustee Conn said that the motion had died by the two-to-two vote.

" 'That's what you say.' Chairman Siggelkow ruled. 'The Chair says it passed. The chair will appoint a committee.'

"He then asked Attorney Lampert to take action to enjoin Mrs. Bills from any further use of village equipment or personnel for her own purpose or personal gain. Mr. Lampert said he would do so 'if the Board so orders. I will bring no action in Court without

the orders of the majority of the Board.' Chairman Siggelkow said that the 'Board has nothing to do with it. The Chairman has ordered it.'"

The following appears on the minutes of July 2, 1962:

"Trustee Conn moved to elect Joe Gowey as Chairman of the Village Board of Trustees to succeed our present chairman as soon as the Village Attorney can present this matter, coupled with the action of our last regular meeting, to a Court and its approval of action taken. Motion was seconded by Trustee Bills.

"Chairman Siggelkow stated that the Chair refused to recognize said motion. On his failure to call for a vote, Trustee Conn called for a vote on his motion.

"Voting in favor of said motion were Trustee Bills, Trustee Conn and Trustee Gowey. Voting against said motion was Trustee Lawrence, Trustee Siggelkow refrained from voting. Motion carried by a majority vote.

"Chairman Siggelkow ordered the Clerk of the Board not to include in the Minutes of the meeting the action on previous motion because the Chair had not recognized the motion and the action was not legal."

The question raised on this appeal is the sufficiency of the complaint to state a claim upon which relief can be granted. The trial court's conclusion that it did not state such a claim was based upon the proposition that, having been elected chairman by the village board at its organization, defendant's term of office as chairman continued until a succeeding board was organized after the next general election and a successor was chosen chairman by such succeeding board; that, since he was elected to the office of chairman for a fixed period, he could not be removed from such office by the board during such period, except for cause and after notice and an opportunity to be heard, in proceedings for removal as provided by I.C., Title 19, Chap. 41. Thus, we reach the ultimate question as to whether the chairman chosen by a village board of trustees at its organization becomes chairman for a fixed term, and whether he may be removed by the board at its pleasure and without notice or hearing.

Const. art. 18, § 6, in part provides that "the legislature by general and uniform laws shall provide for such township, precinct and municipal officers as public convenience may require, and shall prescribe their duties, and fix their terms of office."

"The corporate powers and duties of every village shall be vested in a board

of trustees, to consist of five members." I.C. § 50–702.

Idaho Code, § 50–703 provides the qualifications for the office of trustee; that the term of office shall be four years; and for the election of two trustees, and three trustees, alternately at succeeding biennial elections.

"Every trustee before entering upon the duties of his office, shall take an oath to support the constitution of the United States and the constitution of the state of Idaho, and faithfully and impartially to discharge the duties of his office and every board of trustees shall assemble within twenty days after their appointment or election, and choose a chairman from their number. The board of trustees shall by ordinance fix the time and place of holding their stated meetings and may be convened at any time by the chairman." I.C. § 50–704.

Idaho Code, § 50–705 provides that a majority of the trustees shall constitute a quorum to do business.

Idaho Code, § 50–707 details the powers of village trustees and includes enforcement of all ordinances by inflicting penalties for violation thereof.

Idaho Code, § 50–709 empowers the board to appoint a clerk, treasurer, attorney and such night watch and police as may be necessary.

"The chairman of such board of trustees shall cause to be printed and published the by-laws and ordinances of the board, for the information of the inhabitants, and cause the same to be carried into effect, and in case of the absence of the chairman of the board from any meeting of the board of trustees, such board shall have power to appoint a chairman, pro tempore, who shall, for the time being, exercise and have the powers, and perform the same duty, as the regular chairman." I.C. § 50–711.

Defendant urges that sections 50–703, 50–704 and 50–711 evince an intention on the part of the legislature that the chairman of a village board when chosen for that office shall hold the same until the organization of the next succeeding board. This view was adopted by the trial court, based upon the decision of this court in Prichard v. McBride, 28 Idaho 346, 154 P. 624. In that case the county commissioners, elected at the general election in November, 1914, organized on the second Monday of January, 1915, by electing Don C. McCall one of their number, as chairman. June 15, 1915, McCall resigned the chairmanship and the plaintiff Prichard was elected chairman. July 5, 1915, Mc-

Call ceased to be a member of the commission. The defendant McBride was appointed by the governor and qualified to fill the vacancy. Thereafter, by vote of McBride and the third commissioner, the office of chairman was declared to be vacant and McBride was elected chairman. The statutes applicable in that case provided that the term of office of commissioners was two years; that the members of the board must at their first regular meeting next after their election, elect a chairman from their number; that a majority of the board constitutes a quorum; and that in absence or inability of the chairman to act, the members must by order elect one of their number to act as chairman temporarily. This court in that case construed those statutory provisions as a clear indication of the intention of the legislature "to provide for the selection of a permanent chairman at the first meeting of the board, whose right to preside at all meetings should extend during his term of office as county commissioner, unless he voluntarily resigned as the chairman of said board, or was removed from, or ceased to be a member of, the board."

█ Prichard v. McBride was a two to one decision. Justice Morgan, dissenting, called attention to art. 18, § 6, of the constitution, which enumerates the county officers to be elected biennially in each county and provides "No other county offices shall be established." Since chairman of the board was not one of the offices enumerated, it was Justice Morgan's opinion that the legislature could not create such an office and did not do so by the terms of the statutes relied upon by the majority, and that the statute providing for the election of a chairman at the first meeting of the board, "cannot be construed to be more than a direction to the board, fixing the time and manner of designating one of its members to preside at its meetings." Justice Morgan did not find in the statutes any indication of a legislative intent to fix the tenure of the chairman of the board, and further said:

"The chairman is merely a member of the board of county commissioners, who has been designated by the board to discharge certain duties incidental to its chairmanship, and, no term during which he shall preside having been fixed, he cannot be heard to complain if the board sees fit to depose him and to designate another of its members to discharge those duties." Prichard v. McBride, 28 Idaho 346, at 354, 154 P. 624, at 626.

We deem this quotation from the dissenting opinion to be a correct statement of the law.

Defendant also relies upon the authority of Beem v. Davis, 31 Idaho 730, 175 P. 959. That was an action for a writ of

mandate to compel the village trustees and the "constable" to enforce certain building restrictions imposed by ordinance. The chairman of the board, as such, was not named a defendant in the petition. This court held that since the statute (I.C. § 50-711, supra) made it the duty of the chairman to cause the by-laws and ordinances to be carried into effect, he was the executive officer of the village and should be named a defendant specifically as chairman of the board. The court questioned the propriety of issuing a writ against a subordinate officer, such as a policeman, since such officer was removable at the pleasure of the board, and his removal would render the writ nugatory. The court did not hold that the chairman was not subject to removal at the pleasure of the board. What it did hold was that, since the statute made it his duty to execute the ordinance of the village, he, as such chairman, should be made a party so that any writ issued would direct him to perform his statutory duty. Any inference or implication that the board could not render the writ nugatory—by attempting to remove its chairman—because he was not removable at the pleasure of the board, was beside the point in that case, and no longer tenable, because the applicable law was amended in 1931, after the Beem v. Davis decision, to provide for the substitution of the successor in office in actions against public officials. I.C. § 5-319, S.L.1931, c. 96. Re-

movability of the chairman was beside the point and immaterial in the Beem case, because the statutory duty imposed upon the chairman made it necessary that any writ issued be directed to him as such; and in addition, in case of removal as chairman, he would still be amenable to the writ as a member of the board of trustees, and any successor chosen by the board would likewise be subject to the writ. Furthermore, I.C. § 50-707, after enumerating specific powers of the trustees, provides:

"in addition to the special powers herein conferred and granted, maintaining the peace, good government and welfare of the town or village, and its trade, commerce and manufacturies, and to enforce all ordinances by inflicting penalties upon inhabitants or other persons for the violation thereof".

Thus, executive powers are conferred upon the trustees concurrent, in certain respects, with those conferred upon the chairman of the board by I.C. § 50-711, supra. See: Laguna Beach County Water Dist. v. Orange County, 30 Cal.App.2d 740, 87 P.2d 46; Cove Lodge No. 52 I. O. O. F. v. Harris, 134 Or. 566, 294 P. 355; Hopping v. Council of City of Richmond, 170 Cal. 605, 150 P. 977.

■ We think it also noteworthy that the legislature, in creating the offices of village trustees and chairman of the board,

has not regarded the office of chairman as superior to that of trustee. By I. C. § 50–704, supra, every trustee is required to take an oath to support the constitutions of state and nation, "and faithfully and impartially to discharge the duties of his office," while no oath at all is required to be taken by the chairman, as such. At meetings of the board of trustees the chairman is merely the presiding officer. In the performance of executive duties imposed by statute the chairman acts as statutory agent of the board, since "The corporate powers and duties of every village" are vested in the board of trustees, I.C. § 50–702.

In Conwell v. Village of Culdesac, 13 Idaho 575, 92 P. 535, the plaintiff alleged that he had been appointed by the board of trustees as marshal and street commissioner of the village for the period of one year. During that period charges were filed with the board against him and the board notified him of time and place for hearing thereon. Petitioner then applied to the court for a writ of prohibition against the board, contending that the board had no jurisdiction to hear the charges or power to discharge him until the expiration of the term for which he was appointed, and that the only way in which he could be removed from office was by procedure prescribed by R.S. §§ 7445 to 7459 (now I.C., Title 19, Chap. 41, also relied upon by defendant herein). After

calling attention to the statute (now I.C. § 50–709, supra) this court said:

"* * * It will be observed from the foregoing section that the board of trustees had the authority to appoint 'such night watch and police' as they might deem necessary. No fixed period of service is established by the legislature; neither has our attention been called to any provision of the statute in which mention is made of grounds on which such officer may be removed, nor of the power or authority to remove such officer. In the absence of any legislation on the subject, the general and usually accepted principles of law and construction must prevail. It is generally held by the authorities and text-writers that in the absence of legislation on the subject of removal and grounds therefor, the power to remove is incident to the power to appoint, and that the authority to appoint an officer carries with it the resultant power and authority to remove him. * * * Since the statute has not fixed the term of his employment, the board may employ him for a day, week, month, or for a year, as it has done in the petitioner's case, but the fact of such employment does not elevate the employee above the power, authority and superintending control of the board that appointed him. They might

cease to need his services, or he might so conduct himself in the discharge of his duties as to be a menace to the peace and good order of the community. The statute being entirely silent on the question, it is fair to look to the results that would follow if petitioner's contention was to be upheld in determining the probable legislative intent in enacting this section of the statute. The purpose for which they authorized the appointment of a night watch and policeman was to maintain peace, quiet and good order within the corporate limits of the village and afford protection to life and property. To authorize the board to appoint such officers or employees, and on the contrary give them no power or authority whatever to remove them, might result in many instances in accomplishing the very reverse of the evident legislative intention authorizing the appointment of such officers. If a police officer could discharge his duties to his own liking and in disregard of law and the orders and directions of the board of trustees, he might become insolent, insulting and menacing to the citizens, and yet hold his office independent of the board of trustees and against their will. This case differs from that class of cases where the statute or charter specifies a particular office, and provides for the election, appointment, or employment of an incumbent for a fixed period of time. It also differs from those cases where the statute enumerates the causes for which a removal may be made. Here it was evidently the intention of the Legislature to leave the municipality free and unhampered in the matter of exercising its police control and authority within its corporate limits, and to authorize the board of trustees to employ and remove police officers at such times and in such manner as they might deem in the interest of the public service." 13 Idaho 578, 579, 580, 92 P. 535.

The court then noted the plaintiff's contention that the statutory procedure for removal of civil officers (now I.C., Title 19, Chap. 41) applied and was the only remedy available to the village, and further said:

" * * * We cannot agree with this contention. The remedy there prescribed is, at best, nothing more than a concurrent and cumulative remedy with that being pursued by the board of trustees. In other words, they may exercise incidentally the power of removal which accompanies the power of appointment, or they might pursue the remedy pointed out by statute. The contention that the statutory remedy is exclusive is out of harmony with both the spirit and purpose of the statute

authorizing the incorporation of cities, towns, and villages. We do not think it was ever intended by the Legislature that municipal authorities should go into a district court every time they want to discharge an appointive officer or employé." 13 Idaho at 580, 92 P. at 536.

■ What was said in that case is applicable here. The statute does not purport to fix the term of the chairman of the board of trustees; nor provide any grounds upon which such officer may be removed; nor is any mention made of the power or authority to remove such officer. The general rule, almost universally accepted, applies in such case; that is, the power to remove is incident to the power to appoint, and that the authority to appoint an officer carries with it the authority to remove such officer in the absence of any constitutional or statutory restriction. Kierk v. City of Thief River Falls, 255 Minn. 141, 96 N.W. 2d 28; Cliff v. Parsons, 90 Iowa 665, 57 N.W. 599; In re Opinion of Justices, 239 Mass. 603, 133 N.E. 452; Kropp v. Common Council of City of North Tonawanda, 26 Misc.2d 127, 207 N.Y.S.2d 411; Armitage v. Fisher, 74 Hun. 167, 26 N.Y.S. 364; Commonwealth ex rel. Houlahen v. Flynn, 348 Pa. 101, 34 A.2d 59; Aspinwall v. Harris, 217 Ga. 485, 123 S.E.2d 652; Konen v. New Orleans Police Dept., 226 La. 739, 77 So.2d 24; Potts v. Morehouse Parish School

Board, 177 La. 1103, 150 So. 290, 91 A.L.R. 1093; Willens v. Personnel Board of Kansas City (Mo.App.) 277 S.W.2d 665; State ex rel. Fox v. Alt (Mo.) 26 Mo.App. 673; Levy v. Woods, 84 U.S.App.D.C. 138, 171 F.2d 145.

Watson v. Common Council of City of Marysville (Cal.App.) 140 P.2d 874, involved the authority of the city council to remove from office the mayor elected by it. The court said:

"The historical rule of parliamentary law always has been that a legislative body having the power to choose its own presiding officer from among its own members has also the inherent power to remove such officer at its will or pleasure unless prohibited by some constitutional or statutory provision. Here we find no such prohibition. The Mayor, as such presiding officer, being freely elected by other members of the Council, is removable by them at their pleasure in the same manner. (Cushing's Law and Practice of Legislative Assembly, Section 299.)" 140 P.2d at 876.

State ex rel. Childs v. Kiichli, 53 Minn. 147, 54 N.W. 1069, 19 L.R.A. 779, involved the authority of the council of the city of Minneapolis to remove the president of the council. The court said:

"A city council is a local legislative body, and in creating it the legislature,

by implication, within the limits prescribed, conferred upon it all the powers and privileges in the manner of conducting their own proceedings usually recognized by parliamentary law as belonging to such bodies; and it would require a clear and explicit expression of legislative intention to that effect to justify the conclusion that it was the design to deprive this city council of the universally recognized parliamentary right of control over their own presiding officer." 54 N.W. at 1070, 19 L.R.A. at 782.

" * * * Generally the power to appoint public officials carries with it the power of removal. (Citations)" United States v. White County Bridge Commission, 7 Cir., 275 F.2d 529, at 535.

" * * * The authorities all agree that the power to appoint officers or employees of a municipal corporation carries with it the power to remove such appointees at pleasure unless the power of removal is restricted by statutory law. (Citations)" Oikari v. Ind. School Dist. No. 40, St. Louis County, 170 Minn. 301, 212 N.W. 598.

In the annotation appearing in 91 A.L.R. at 1097, after quoting the general rule from R.C.L., the annotator said:

"The general rule to the above effect, which appears to have been adopted almost universally, has been applied in a considerable number of cases in which the appointing authority has attempted to fix a definite term for the particular officer." (Authorities collected include Conwell v. Culdesac, supra.)

The general principles involved are thus stated in 43 Am.Jur. Public Officers, §§ 183 and 184, where authorities are collected:

"When the term or tenure of a public officer is not fixed by law, and the removal is not governed by constitutional or statutory provision, the general rule is that the power of removal is incident to the power to appoint. Inasmuch as the tenure has not been declared by law, the office is held during the pleasure of the authority making the appointment, and no formal charges or hearings are required in the absence of some statute on the subject. The foregoing rule applies although the appointing power attempts to fix a definite term. This implied power to remove may not be contracted away so as to bind the appointing authority to retain a minor officer for a definite period.

"But the power of removal is not incident to the power of appointment where the extent of the term of office is fixed by the statute. In the absence

of any provision for summary removal, appointments to continue for life or during good behavior—which in contemplation of law is for a fixed term—or for a fixed term of years cannot be terminated except for cause. It is the fixity of the term that destroys the power of removal at pleasure. For the purposes of this rule, the term of persons appointed to fill vacancies in office is considered definite when it is provided that they shall hold until the next general election and the qualification of their successors.

"Power in the appointing authority to remove a public officer may be implied where to the statutory specification of his term of office are added the words 'unless sooner removed.'" § 183.

"The general rule as to offices created to be filled by appointment is that if the legislature does not designate the term of the office, the appointee will hold only during the pleasure of the appointing power, and may be removed at pleasure, at any time without notice or hearing." § 184.

"As a general rule, in the absence of any limiting provision of constitution or statute, the power of appointment carries with it, as an incident, the power to remove, where no definite term of office is fixed by law; and this implied power to remove cannot be contracted away so as to bind the appointing bodies to retain an officer for a definite fixed period." 67 C.J.S. Officers § 59(2).

"If no definite term exists, and the law does not otherwise provide, the tenure is at the will of the authority which confers the office, and unless restrained by law, the power which appoints may remove." 3 McQuillin, Municipal Corporations, 3rd Ed., § 12.-112, p. 411.

"Unless the law otherwise provides, if the officer is appointed, or elected, as by a council or board, and no definite term is prescribed, he holds at the will or pleasure of his superior or the appointing or electing authority; hence, the power of removal may be exercised at any time by such agency. In such case the power of removal is regarded as incident to the power of appointment or election. Thus, as it has otherwise been expressed, the general rule is that where the power of appointment is conferred in general terms, the power of removal at the discretion and at the will of the appointing power is implied, and always exists unless limited or restricted by some positive provision of the law. In brief,

the power to appoint carries with it the power to discharge or remove. It follows that power of removal may be exercised at any time, without notice, and without the necessity of providing formal procedure therefor; * * *."
4 McQuillin, Municipal Corporations, 3rd Ed., § 12.249, pp. 298, 299, 300, 301 and 302.

In 99 A.L.R. 336, in an annotation on "Power to remove public officer without notice and hearing", the following appears:

"According to the overwhelming weight of authority the legislature of a state has complete power to remove officers from office, whether they be elective or not, or to authorize their removal, without notice or hearing, subject only to such limitations as the Constitution of the state may impose as to particular offices. The soundness of the general proposition that such power exists is particularly plain where the tenure of office is not for a fixed term, or for life, or during good behavior; in fact, where the tenure is thus utterly indefinite, none of the cases, as the writer understands them, denies the general legislative power to authorize a removal without any formality whatever." 99 A.L.R. at 336.

"The general conclusion may be drawn from the cases that where an officer does not hold office for a fixed term, and there is no constitutional or statutory provision from which it appears, or may be inferred, that notice and hearing are required before removing him from office, it must be concluded that the power of removal may be exercised at any time without notice or hearing." 99 A.L.R. at 381.

" * * * The power of appointment generally carries with it as an incident the power to remove. Implied power to remove cannot be contracted away so as to bind the appointing bodies to retain an officer for a definite fixed period. 46 C.J. 985, § 146; Wright v. Gamble, 136 Ga. 376, 71 S.E. 795, 35 L.R.A. (N.S.) 866, Ann.Cas.1912C, 372.. 22 R.C.L. 562, § 267, lays down the rule as follows: 'The general rule is that when an office is created to be filled by appointment, if the legislature does not designate the term of the office, the appointee will hold only during the pleasure of the appointing power, and may be removed at pleasure, at any time without notice or hearing.' See, also, Irving v. Ferguson, 118 Wash. 37, 202 P. 269.

"Under the law, where the right of removal is incident to the power to appoint, no formal charges or hearing are required in the absence of a statute:

on the subject." Morris v. Parks, 145 Or. 481, 28 P.2d 215, at 216.

"When the term or tenure of a public officer is not fixed by law, the general rule is that the power of removal or suspension, unless controlled by statute, is an incident to the power of appointment. In such case the office is held during the pleasure of the authority making the appointment, and in the absence of a statute on the subject no notice or charges or hearings are required for the suspension or removal by the authority appointing the officer." Sheriff of Salt Lake County v. Board of Commissioners, 71 Utah 593, 268 P. 783, at 784.

"Indeed, even where the power of removal is not expressly conferred, the general rule is that a grant of the power to appoint is construed to carry with it, by necessary implication, a grant also of the unconditional power to remove, if the term of office is not fixed by law and the right to remove is not in any other manner restricted. (Citations)" State ex rel. Fischer v. City of Lincoln, 137 Neb. 97, 288 N.W. 499, at 500.

Referring to Watson v. Common Council of City of Marysville (Cal.App.) 140 P.2d 874, supra, defendant calls attention to a provision in the California constitution to the effect that where the term of an officer is not fixed by either constitution or statute, such officer shall hold his office "during the pleasure of the authority making his appointment." The same general rule has been incorporated into the law of Montana by statute. State v. District Court (Mont.) 206 P.2d 166. In that case the Montana court regarded such constitutional and statutory provisions as declaratory of the general rule otherwise applicable. Also, see authorities cited at page 170, 206 P.2d.

Defendant cites Village of Kendrick v. Nelson, 13 Idaho 244, 89 P. 755. That was an action to enforce the removal of a village treasurer. The court there observed that both the tenure, and cause for removal, of the treasurer were fixed by statute. That case was distinguished on that ground by Justice Ailshie (author of both opinions) in Conwell v. Culdesac, supra. In the Kendrick case this court quoted Michem on Public Officers, § 454, as follows:

" ' *  *  * In those cases in which the office is held at the pleasure of the appointing power, and where the power of removal is exercisable at its mere discretion it is well settled that the officer may be removed without notice or hearing. *  *  *' " 13 Idaho at 249-250, 89 P. at 756.

In Ewin v. Ind. School Dist. No. 8, 10 Idaho 102, 77 P. 222 (also by Ailshie), this court said:

"* * * where the power to remove is restricted or limited to certain reasons or causes, the final determination as to whether the case falls within any of those causes rests with the courts, and may be reviewed or inquired into by them, and that, on the other hand, where the power is general, unlimited, and unrestricted, and is once exercised, it cannot and will not be questioned or examined into by the courts. It may be exercised either with or without notice." 10 Idaho at 115, 77 P. at 226.

To the extent that Prichard v. McBride, 28 Idaho 346, 154 P. 624, is in conflict with this opinion, the same is hereby overruled.

In this case the facts alleged and those disclosed by the minutes of the trustees' meetings graphically portray the utter futility of the attempt of the majority of the trustees to conduct the business of the village government, or to discharge the duties of their office. Without the power to control the chairman they could do nothing contrary to his wishes. With the collaboration of one member of the board, the chairman dictated the course of village government... The majority members were in effect shorn of their authority and ousted from office, in direct violation of the applicable statutes. I.C. § 50-705 declares that the majority shall constitute a quorum to do business. I.C. § 73-112 declares that the authority given to the board of trustees is given to a majority of them. Ackley v. Perrin, 10 Idaho 531, 79 P. 192.

The remedy provided by I.C., Title 19, Chap. 41, is not only not exclusive, but in many cases would not be adequate. To require the majority of the board to resort to the district court by way of indictment or information would permit the chairman, with one member of the board, to wreck havoc and confusion in village affairs while the prosecution was pending. And such could occur during summary proceedings under I.C. § 19-4115. Moreover, the majority members in this case were not seeking to oust defendant from his office of village trustee. They sought only to claim and exercise their authority as majority members of the board. In view of the attitude and rulings of the chairman they could do this only by removing him from the office of chairman.

■ There are still further reasons why I.C. Title 19, Chap. 41, should not be held to provide an exclusive remedy. (1) While it was early held that proceedings under

that chapter were not criminal, Ponting v. Isaman, 7 Idaho 283, 62 P. 680, such more recently have been held to be in substance and effect criminal prosecutions. Daugherty v. Nagel, 28 Idaho 302, 154 P. 375; McRoberts v. Hoar, 28 Idaho 163, 152 P. 1046; and "quasi-criminal," Archbold v. Huntington, 34 Idaho 558, 201 P. 1041. Majority members of the board should not be compelled to bring such charges where such is not necessary to their purpose. (2) It was held in McRoberts v. Hoar that proceedings under § 19-4115 could not be maintained by a private person for any misconduct in office not expressly made a ground for removal by that statute. Only two grounds are there named, (a) collection of illegal fees, and (b) neglect or refusal to perform official duties. Other valid grounds could justify the trustees in deposing their chairman. And in this case it could be debated whether defendant's conduct constituted misfeasance (58 C.J.S. 824) or malfeasance (54 C.J.S. 910) or both.

The judgment is reversed and the cause is remanded with directions to reinstate the complaint and for further proceedings.

Costs to appellant.

KNUDSON, C. J., and McQUADE, McFADDEN and SMITH, JJ., concur.